In the Matter of ROBERT W. CAREY et al., Individually and Constituting the Committee to Void Paper Disabilities, an Unincorporated Association, Respondents, against FERDINAND Q. MORTON et al., Constituting the Municipal Civil Service Commission of the City of New York, Appellants, and NAT BARROW et al., Interveners, Appellants.

Argued March 8, 1948; decided April 22, 1948.

*John .P. McGrath*, Corporation Counsel (*Seymour B. Quel, David M. Fuchs* and *Frank A. Piazza* of counsel), for defendants-appellants. I. The Municipal Civil Service Commission is required under the State Constitution and the Civil Service Law to grant a disabled veterans' preference in all cases where the Veterans' Administration certifies (1) that a veteran sustained a war service-connected disability and (2) that such disability is in existence at the time of application for appointment or promotion. Such certifications were issued herein and they are conclusive. Accordingly, the Civil Service Commission, in granting the preferences herein, irrespective of the nature, extent or degree of the disability, merely followed the constitutional and statutory mandate. (*Matter of Potts* v. *Kaplan*, 264 N. Y. 110; *Matter of Winternitz* v. *Morton*, 272 App. Div. 339, 297 N. Y. 541; *Matter of Barry* v. *Chapman*, 189 Misc. 928.) II. Even if the certificates of the Veterans' Administration are rebuttable to the extent that the disabilities certified may be analyzed by the courts or the Civil Service Commission all of the certificates used herein followed a standard which complied with the meaning of the word " disability " as defined by the courts and adopted by the Legislature. In any event, the courts below were wrong in excluding all disabled veterans who were not receiving Federal pension payments from the benefits of civil service preference accorded by the Constitution. '(*Matter of Potts* v. *Kaplan*, 264 N. Y. 110; *Matter of Winternitz* v. *Morton*, 272 App. Div. 339, 297 N. Y. 541; *Matter of Barry* v. *Chapman*, 189 Misc. 928.)

*Robert H. Schaffer* and *Leo Brown* for interveners, appellants. I. The Court of Appeals held in the *Potts* case (264 N. Y. 110) in construing the 1930 Constitution, that disability warranting civil service preference meant some lessening of bodily force or some physical depreciation, even in slight degree, recognized as such by the Federal Government. When the Legislature and the People re-enacted substantially the same language in the 1945 amendment, the same meaning necessarily attached — yet the court below has held that the language used denies preference to veterans with disability ratings of less than 10%. (*Matter of Barry* v. *Chapman*, 189 Misc. 928.) II. The disability certificates in this case, as contrasted with

those in the *Winternitz* case (272 App. Div. 341) were based upon a finding that there presently existed " some impairment of the organ or function affected ". They specifically attested to the incurrence of disability during war, and to its continuance and present existence. Accordingly, the certificates fully complied with the constitutional requirements. III. The certificates of disability issued by the Veterans' Administration must be taken at face value and are not subject to evidence rebutting the findings of fact as to the incurrence of the disability or its present existence. IV. The Federal statute awarding veterans disability preference in the United States civil service is substantially the same as our State constitutional provision. In interpreting the Federal statute preferences have been awarded equally to those with disability ratings of 10% or more, and to those with less than 10% ratings. The minimum of 10% adopted by the courts below is thus completely at variance with the practice of the Federal Government.

*Nathaniel L. Goldstein, Attorney-General (Wendell P. Brown and Kent H. Brown of counsel)*, in support of appellant's position. The certificates comply in all respects with the constitutional prerequisites for establishing the right to disabled veterans' preference.

*H. Eliot Kaplan* and *Samuel D. Smoleff* for respondents. I. The interpretation of the terms " disabled " and " disability " in section 6 of article V of the State Constitution presents a judicial question. (*Matter of Stork Restaurant, Inc., v. Boland,* 282 N. Y. 256; *Matter of Langdon v. Teachers' Retirement Bd.,* 252 N. Y. 508; *Matter of Helfrick v. Dahlstrom Metallic Door Co.,* 256 N. Y. 199; *Matter of Oram v. Moon Co.,* 285 N. Y. 42.) II. The terms " disabled " and " disability " mean a substantial impairment of health or physique or a substantial disfigurement, and exclude trivial or insubstantial conditions. (*Matter of Potts v. Kaplan,* 264 N. Y. 110; *Coyle v. Gray,* 73 N. Y. S. 2d 277; *People ex rel. Schau v. McWilliams,* 185 N. Y. 92; *Matter of Sherrill v. O'Brien,* 188 N. Y. 185; *Anderson v. Mt. Clemens Pottery Co.,* 326 U. S. 706; *Matter of Kuhn v. Curran,* 294 N. Y. 207.) III. The Constitution adopts the standard of disability applied by the Veterans' Administration in its own field. The Veterans'

Administration has no jurisdiction to set up a different standard, with nominal percentage evaluations for trivial defects or minor ailments, merely for the purpose of enabling persons to claim civil service preference under the New York Constitution. (*Kane* v. *Walsh,* 295 N. Y. 198; *Matter of Natilson* v. *Hodson,* 264 App. Div. 384, 289 N. Y. 842; *Matter of Potts* v. *Kaplan,* 264 N. Y. 110; *Bus Depot Holding Corp.* v. *Valentine,* 288 N. Y. 115; *Matter of Small* v. *Moss,* 279 N. Y. 288.) IV. The new certificates now being issued by the Veterans' Administration are not based on any current medical or physical examination of the veteran, any more than they were in the *Winternitz* case. They are, therefore, lacking in probative force and may not be made the basis for granting civil service preference. (*Matter of Winternitz* v. *Morton,* 297 N. Y. 541.) V. The order should be affirmed as the only logical and practical solution in fairness to all veterans. (*Matter of Burke* v. *Cohen,* 265 N. Y. 210.)

CONWAY, J. There is presented for our consideration and construction the 1945 amendment to section 6 of article V of the New York State Constitution. We shall quote it presently. It will be helpful to our solution of the problem if we bear in mind certain relevant facts bearing upon it. There were constitutional amendments to section 6 of article V after World War I and World War II. They differed in certain respects but followed one general pattern. The first amendment was considered by us in *Matter of Potts* v. *Kaplan* (264 N. Y. 110). The second amendment is now before us. It is against that background that the amendments and decision should be viewed and harmonized. The rules for construing our Constitution are well known and have been stated as follows: "In construing the language of the Constitution as in construing the language of a statute, the courts should look for the intention of the People and give to the language used its ordinary meaning." (*Matter of Sherrill* v. *O'Brien,* 188 N. Y. 185, 207.)

"We may not, however, construe the words of the Constitution in exactly the same manner as we would construe the words of a will or contract drafted by careful lawyers, or even a statute enacted by the Legislature. It is the approval of the People of the State which gives force to a provision of the Constitution

drafted by the convention, and in construing the Constitution we seek the meaning which the words would convey to an intelligent, careful voter." (*Matter of Kuhn* v. *Curran,* 294 N. Y. 207, 217.)

We must remember that we are dealing with the disabilities of men who suffered them for their country and with the reward which the grateful People of this State wished to give, to those who were our citizens and residents, by reason thereof. The preference granted to those disabled is as to all appointments to the civil service and all future promotions. The People and Legislature have granted nondisabled veterans a preference, for a limited period of years, but only after all disabled veterans have been appointed or promoted. (N. Y. Const. art. V, § 6; Civil Service Law, § 21, the implementing statute.) Strong emotions have been aroused because this proceeding may affect many hundreds of persons permanently and is of great financial moment to them. Emotional approaches in brief and argument are not helpful and do not indicate the proper plane upon which to consider constitutional and statutory construction.

The petitioners are firemen in the uniformed force of the Fire Department of the City of New York and all three are eligibles upon the promotion list for lieutenant, fire department, duly promulgated by the Municipal Civil Service Commission (hereinafter termed Commission) on or about August 12, 1947, after competitive promotion examinations. There is a total of approximately 1,100 veterans on the list and more than 400 of them have claimed and been granted disabled veterans' preference under section 6 of article V of the New York State Constitution.

The petitioners alleged their respective ratings based upon merit and fitness in the examination; that a great number of persons, approximately 200, who have claimed and who have been granted disabled veterans' preference, rank below them in order of merit and fitness upon the promotion eligible list, but have been preferred over them because, contrary to the provisions of section 6 of article V, the Commission has adopted a standard of disability different from and inconsistent with the standard of disability applied by the Veterans' Administration (hereinafter referred to as VA) in the administration of Federal laws with which said VA is charged; that by Executive Order, promulgated by the President of the United States pursuant to

authority granted by Act of Congress of March 20, 1933 (48 U. S. Stat. 9; U. S. Code, tit. 38, § 703) the VA is directed to apply a schedule of disability ratings commencing with a minimum or initial degree of disability of 10% (Veterans'·Regulation No. 3 [a]; U. S. Code [1940 ed.], tit. 38, ch. 12, p. 3327 [Code of Fed. Reg., tit. 38, § 35.03]); that said regulation constitutes the only authority possessed by the VA to determine standards and degrees of disability and to issue certificates of disability thereon and that VA has no authority to prescribe or define a lower and inconsistent standard or degree or extent of disability *in the interpretation and application of the Constitution of the State of New York*. The petitioners then prayed for the proper evaluation of disabilities entitling a veteran to a preference as prescribed by section 6 of article V of the New York State Constitution.

That petition presented to Special Term for construction, section 6 of article V of the State Constitution. The application at Special Term resulted favorably to the petitioners and an order was granted which provided as follows, insofar as applicable here:

" Ordered that the petitioners' motion be and the same is hereby granted in all respects, and the defendant Municipal Civil Service Commission is hereby directed and commanded;

" (1) To disapprove applications for disabled veterans preference on the promotion list of Lieutenant, Fire Department, based upon alleged ' 0% ', or its equivalent ' less than 10% ', disability, or alleged disability of unspecified degree or percentage.

" (2) To disapprove all such applications for disabled veterans preference except in cases where the application is supported by a certificate of the Veterans Administration, showing affirmatively (a) that the applicant has been examined on a specified recent date by the Veterans Administration; (b.) that a condition described in the certificate was found to exist; and (c) that such condition has received a minimum disability rating of 10% or a higher disability rating in accordance with the Schedule of Ratings of the Veterans Administration authorized by law; provided, however, that in a proper case the certificate of the Veterans Administration may show that a permanent stabilized condition of disability exists to an extent of 10% or more and that a reexamination is deemed to be unnecessary.

" (3) To rescind and cancel all certifications for appointment of alleged disabled veterans heretofore made which do not comply with the foregoing provisions ' 1 ' and ' 2 ' of this order."

That order was affirmed unanimously by the Appellate Division and is now before us for review.

In November, 1945, there was adopted an amendment to section 6 of article V of the New York State Constitution. We quote the section in its entirety: " Appointments and promotions in the civil service of the state and all of the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, as far as practicable, by examination, which, as far as practicable, shall be competitive; provided, however, that any member of the armed forces of the United States who served therein in time of war, who is a citizen and resident of this state and was a resident at the time of his or her entrance into the armed forces of the United States and was honorably discharged or released under honorable circumstances from such service, and who was *disabled therein to an extent certified* by the United States veterans administration, and *whose disability is certified* by the United States veterans administration *to be in existence* at the time of his or her application for appointment or promotion, shall be entitled to preference and shall be appointed or promoted before any other appointments or promotions are made, without regard to his or her standing on any list from which such appointment or promotion may be made. Until December thirty-first, nineteen hundred fifty, but in no event for a period less than five years next following the honorable discharge or release under honorable circumstances of a member of the armed forces of the United States who served therein in time of war, who is a citizen and resident of this state and was a resident at the time of his or her entrance into the armed forces of the United States, he or she shall be entitled, after such disabled members of the armed forces shall have been first preferred, to similar preference in appointment and promotion. Upon the abolition or elimination of positions in the civil service, to which the foregoing preferences are applicable, any such member of the armed forces shall be entitled to preference in the retention of any position held by him or her, in inverse order of the preference as provided in this section. Laws shall be enacted to provide for the enforcement of this section." (Emphasis supplied.)

We shall be better able to understand that amendment if we consider, now, the amendment adopted in 1929. After such adoption, section 6 of article V then read, effective as of January, 1930: " Appointments and promotions in the civil service of the State, and of all the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, so far as practicable, by examinations, which, so far as practicable, shall be competitive; provided, however, any honorably discharged soldiers, sailors, marines or nurses of the army, navy or marine corps of the United States disabled in the actual performance of duty in any war, to an extent recognized by the United States Veterans' Bureau, who are citizens and residents of this state and were at the time of their entrance into the military or naval service of the United States, and whose disability exists at the time of his or her application for such appointment or promotion, shall be entitled to preference in appointment and promotion, without regard to their standing on any list from which such appointment or promotion may be made. Laws shall be made to provide for the enforcement of this section."

Pausing for a moment, we point out that the recognition by the Veterans' Bureau in the 1929 amendment was to be only of the sufferance of the disability. In the 1945 amendment the VA was to certify both as to the sufferance of the disability and of its existence at the time of application for appointment or promotion.

Approaching the construction of section 6 of article V of the Constitution in the light of the rules which we have quoted from the *Sherrill* and *Kuhn* cases (*supra*) we find that any member of the armed forces of the United States *who served therein in time of war* and who was *disabled therein* to an *extent certified* by the VA and whose disability is certified by the VA to be *in existence* at the time of his or her application for appointment or promotion, shall be entitled to a preference. Thus those who served in the armed forces of the United States but not in time of war are not affected by the constitutional provision. That may be important when we consider an Act of Congress (U. S. Code, tit. 5, § 851) which refers to the United States Civil Service. Further, the applicant must have been *disabled* to an *extent* certified by the VA. A further certification must be made by the VA that the

disability is in *existence* at the time of the application for appointment or promotion. It seems quite clear that when we " seek the meaning which the words would convey to an intelligent, careful voter ", as Chief Judge LEHMAN phrased it (*Matter of Kuhn* v. *Curran*, 294 N. Y. 207, 217, *supra*), we find that the voter wished to give a preference to a disabled veteran of a war and not to one who had a service-connected disability acquired during a period of service which was not included in any period of war. (See U. S. Code Congressional Service, 78th Cong., 2d Sess., 1944, p. 1153.) It seems clear that the voter had confidence in the VA, as successor to the duties of the Veterans' Bureau, which had been taking care of, watching over and guarding the rights of veterans for upwards of twelve years at the time of the adoption of the amendment. In providing for the two certificates as to *extent* and existence of the disability it is to be noted that *both* were to be made by the VA. It has the power to certify to the *extent* of a disability. It has that power because Congress granted it and placed in the hands of the President, and in those of the President alone, the authority to certify by regulation " the minimum degrees [extent] of disability and such higher degrees of disability, if any, as in his judgment should be recognized *and* prescribe the rate of pension payable for each such degree of disability." (U. S. Code, tit. 38, § 703.) (Emphasis supplied.) Thus there came to the VA by Congressional Act and Presidential Regulation twin powers — first, to certify degrees or extent of disability, and second, rates of pension, or as it is now denominated " compensation ". The degrees or extent of disability prescribed by the President in Veterans' Regulation No. 3 (a) are the degrees and extent of disability effective under each of those granted powers. By the Presidential Regulation (Veterans' Regulation No. 3 [a]) the VA is directed to disregard any condition which does not amount to the minimum of a 10% disability more specifically defined or indicated by the schedule of ratings of the VA.

To make this clear we quote from the Act of March 20, 1933 (48 U. S. Stat. 9; U. S. Code, tit. 38, § 703) in part as follows:

" § 703. Pensions; differentiation in rates for different wars and causes of disabilities or deaths; power of President.

" For each class of persons specified in subparagraphs (a) and (b) of section 701 of this title the President is hereby

authorized to prescribe by regulation the minimum degrees of disability and such higher degrees of disability, if any, as in his judgment should be recognized and prescribe the rate of pension payable for each such degree of disability. In fixing rates of pensions for disability or death the President shall prescribe by regulation such differentiation as he may deem just and equitable, in the rates to be paid to veterans of different wars and/or their dependents and to be paid for —

" (a) Disabilities and deaths resulting from disease or injury incurred or aggravated in line of duty in war-time service;

" (b) Disabilities and deaths resulting from disease or injury incurred or aggravated in line of duty in peace-time service;

" (c) Disabilities and deaths not incurred in service."

Section 701 of title 38 of the United States Code, insofar as applicable reads as follows:

"Subject to such requirements and limitations as shall be contained in regulations to be issued by the President, and within the limits of appropriations made by Congress, the following classes of persons may be paid a pension:

" (a) Any person who served in the active military or naval service and who is disabled as a result of disease or injury or aggravation of a preexisting disease or injury incurred in line of duty in such service.

" (b) Any person who served in the active military or naval service during the Spanish-American War, including the Boxer Rebellion and the Philippine Insurrection, or the World War, and who is permanently disabled as a result of injury or disease  *  *  * ".

Pursuant to his statutory authority, the President on June 6, 1933, promulgated Executive Order No. 6157 (U. S. Code [1940 ed.], tit. 38, ch. 12, p. 3327 [Code of Fed. Reg., tit. 38, § 35.03]), which is also referred to as Veterans' Regulation No. 3 (a). That provides: " The Administrator of Veterans' Affairs is hereby authorized and directed to adopt and apply a schedule of ratings of reductions in earning capacity from specific injuries or combination of injuries. The ratings shall be based, as far as practicable, upon the average impairments of earning capacity resulting from such injuries in civil occupations. The schedule shall be constructed so as to provide ten grades of disability and no more, upon which

payments of pension shall be based, namely, ten percent, twenty percent, thirty percent, forty percent, fifty percent, sixty percent, seventy percent, eighty percent, ninety percent, and total, one hundred percent. The Administrator of Veterans' Affairs shall from time to time readjust this schedule of ratings in accordance with experience.''

The rates of pensions for wartime service disabilities and peacetime service disabilities will be found in Veterans' Regulations following chapter 12 of title 38 of the 1940 edition of the United States Code (pp. 3321–3323 [Code of Fed. Reg., tit. 38, § 35.011 *et seq.*]).

This is the measure of the competency of VA under sections 701 and 703 of title 38 of the United States Code and Veterans' Regulation 3(a). It has no power to certify a grade of disability of less than 10% for wartime service or peacetime service. Disability is a word which the man on the street or the careful intelligent voter understands. It was the word used in the Congressional Act. It was the word used in Presidential Executive Order No. 6157. It was the word used in our constitutional amendment adopted by the People which became section 6 of article V. The use of the word *extent* in section 6 of article V, had reference, of course, to the disabilities based upon the 10% up to 100% degrees or grades of disabilities outlined in Presidential Executive Order No. 6157 which was in existence in 1945, and which was part of the statutes creating and regulating the VA of the United States.

The VA had no doubt about this. It certified those of whom the petitioners here are complaining, as having a disability of 0%. Originally a veteran authorized the VA to furnish the medical bureau of the Commission with his medical and disability record. Thereupon there was furnished a form of certificate as follows:

'' Veterans Disability War Service Connected...........
    Not Service Connected.............................
    Percentage of Service Connected Disability.............
    Date of Last Examination...........................
    Date of Last Rating................................
    .........................    ..........................
            Date         .         Adjudication Officer ''

That showed the *extent* and percentage of disability and showed as to each of the persons of whom petitioners complain a disability of 0%.

Following the issuing of such certificates by the VA in accordance with its practice there was litigated the proceeding entitled *Matter of Winternitz v. Ferdinand Q. Morton, as President, and Others, Constituting the Municipal Civil Service Commission of the City of New York.* The cases of eight veterans were involved. Each of them had been certified by the VA as having " Veterans Disability War Service Connected — 0% ". No purpose will be served by setting forth in detail the disability noted in each of the eight cases. Suffice it to say that one suffered from " pes planus " (flat feet); a second, from " pyorrhea "; the third from " metatarsalgia, bilateral " (aches in arches) and another from " slight crepitation right shoulder, no limitation of motion." As a result of the disability preference accorded, however, by the Commission, one veteran went from 134th place on his list to 1st place, and another from 133d to 6th. Special Term and the Appellate Division, in the *Winternitz* proceeding, held that the Commission erred in treating those veterans as disabled. We affirmed (297 N. Y. 541) since it was quite clear, as the Appellate Division had written, that the VA had not certified that a disability was *in existence* at the time of the application for appointment or promotion since the certification was 0%.

We have mentioned some of the disabilities claimed, such as flat feet and pyorrhea, not to indicate that such disabilities are mild ones but to indicate that such disabilities, being less than those which are rated and recognized as 10% ones by VA under its schedule of ratings in accordance with experience, as provided in Executive Order No. 6157, were not intended for preference by the People when they adopted the 1945 amendment to section 6 of article V. A less than 10% disability may cause as much suffering subjectively as one rated at considerably more than 10%. That largely depends upon the sufferer. The point is that the People took the preference disability out of that field of inquiry by making it only one to the extent of which VA had the power to certify and that was one of 10% or more. It was within the power of the People to grant or withhold the preference and to define the terms of the grant.

The Commission, following the *Winternitz* decision (*supra*), sought to have the VA abandon its long-settled practice of certifying that there was 0% disability when the disability did not amount to 10%. After conferences and correspondence a new form of certificate was devised. The form of this new certificate is as follows:

> " 1) Did the applicant sustain a war service connected disability? Yes.... No....
> 2) Is that disability now in existence? Yes.... No....
> If the answer to either question 1 or 2 is in the negative, it will not be necessary to answer questions 3 and 4.
> 3) What is the disability?............................
> 4) *If* the percentage of disability is *10 or more, state percentage* ..............................
>
> •••••••••••••••••••••••• ••••••••••••••••••••••••
> Date                    Adjudication Officer "

(Emphasis supplied.)

Under that new practice, the veterans of whom complaint is made here applied for and authorized the VA to furnish the examining service bureau of the Commission their medical and disability records. That is the basis upon which the so-called certificates here were granted and there is no certification of the *extent* of the disability since it was less than 10%. None was attempted despite the use of the word in section 6 of article V and its clear reference to the 10% extent and other percentage extent of the disabilities authorized, defined and prescribed in the Congressional Act and Presidential Order.

That form of certificate fails to disregard, as directed in the Presidential Regulation, any condition which does not amount to a minimum of a 10% disability. It disregards the provision in section 6 of article V of the State Constitution that the preference shall be granted to a veteran of the war " who was disabled therein to an *extent* certified by the United States veterans administration ". (Emphasis supplied.) It rewrites the Presidential Regulation and the constitutional amendment. It excises the word " extent " from the amendment, although it is a primary rule of construction that a constitutional provision or statute must be so read as to give to each word and clause a meaning and proper weight so as to carry out its intent. We

do not think that this new form of alleged certificate is within the competency of the VA as indicated (*supra*).

In 1934, we construed the 1929 amendment in *Matter of Potts* v. *Kaplan* (264 N. Y. 110, *supra*). In connection with the cases of the four men involved, there had been certified to us three questions. We answered all of them. The four men were Duffy, Harte, Farrell and Golebwski. We shall take them in order.

Duffy had been rated by the Veterans' Bureau in 1920, as having a temporary partial 10% disability but in 1932, the Veterans' Bureau reported that he was " Less than 10% — 0% (zero per cent) disabled." (*Potts* opinion, *supra*, p. 115.) Harte had been rated by the Veterans' Bureau as having a temporary partial 10% disability from the time of his discharge from the army on May 7, 1919, to June 9, 1920 (*Potts* record, pp. 14, 15, 49) but from September 13, 1923, was rated as having a disability of less than 10% — (1% as temporary partial) (*Potts* record, pp. 14, 15) and 1% as permanent partial from June 9, 1930 (*Potts* opinion, p. 115). Farrell had no disability from May 8, 1931 (*Potts* record, p. 26; *Potts* opinion, pp. 115, 116) although he had been operated upon for a direct war disability at the American Red Cross Hospital at Newport, Rhode Island, in 1918, and an examination by a medical examiner of the Commission indicated that further surgical correction would be necessary. Golebwski swore that he had received 10% compensation in 1932 (*Potts* record, p. 31) but offered no proof of recognition of disability by the Veterans' Bureau nor of existing disability (*Potts* opinion, p. 116). Thus two of the four established Veterans' Bureau recognition of war service incurred disabilities for a period antedating their application for a preference and the pendency of the *Potts* proceeding. There had been improvement in their condition and although one of them then had an existing disability rated as permanent partial 1%, we disregarded the condition of both.

In the *Potts* case (*supra*, at p. 116), we in effect decided that the Veterans' Bureau (later the VA) had the obligation of determining the extent of the disability incurred " in the actual performance of duty in any war " but that the Commission was to determine the existence of the disability at the time of application for appointment or promotion.

Under those disclosed circumstances in the *Potts* case (*supra*) we answered to one of the certified questions that the granting of a preference, to the four men there involved, by the Commission was an illegal, capricious or arbitrary act and modified the order of the Appellate Division by granting a peremptory order instead of an alternative order of mandamus to correct the wrong. Then for the guidance of the Commission we outlined the purpose of the 1929 amendment and enabling statute, construed them and defined the meaning of disability thereunder. We said (p. 117) that they pointed " toward a reward for one who had, even in a slight degree, sustained in war service some *physical depreciation* which the Federal government had *recognized as such* and whose *impaired physique* due to such recognized illness, disease or wound has continued to exist." (Emphasis supplied.) In other words, the original sustaining of injury in war service of a *physical depreciation* might then be slight so long as its extent was sufficient to be recognized by the Veterans' Bureau. The important fact was that it continued as *impaired physique.* The injury originally sustained in war service was required to be some *physical depreciation,* which continued and existed, at the time of the application for preference, as *impaired physique.* It was to be as we said (pp. 117–118) : " Some lessening of bodily force or some disfigurement, even if unrelated to capacity for wage earning but present at the time of application for a preference  *  *  * ".

Counsel have quoted and relied heavily upon a few sentences which they have not interpreted correctly but which are readily understood when read in context and in the light of the record in the *Potts* case (*supra*) and the then applicable Federal statutes. The first of the two passages to which we shall refer is the following from pages 116–117 in the opinion in the *Potts* case. It reads: " We think that, pursuant to this statutory provision which follows so closely the language of the Constitution, the Civil Service Commission and the appointing officer must accept at their face value certificates issued by the Veterans' Bureau or its successor, the Veterans' Administration. (Act of July 3, 1930, ch. 863; 46 Stat. 1016; U. S. Code, tit. 38, ch. 1-A, § 11.) For the purpose of determining the fact of disability in war, the State has designated that body as its agent. That the applicant whose name appears on such a certificate has been disabled

in actual performance of duty in war and that the nature or character and degree of his disability were such as that body has recognized is evidence not subject to rebuttal. The certificate on these facts is conclusive."

What has not been realized by counsel is that, at the time of the institution of the *Potts* proceeding (*supra*) in January, 1933, section 703 of title 38 of the United States Code had not been enacted and the President had not been authorized "to prescribe by regulation the minimum degrees of disability and such higher degrees of disability, if any, as in his judgment should be recognized ". That section was enacted on March 20, 1933 (see ch. 3, tit. I, § 3; 48 U. S. Stat. 9). The Executive Order promulgated March 31, 1933, pursuant to that section was No. 6091 and was Veterans' Regulation No. 3. It provided for " five grades of disability and no more ". Up to that time disabilities recognized by the Veterans' Bureau were total and temporary disability (U. S. Code [1926 ed.], tit. 38, §§ 473, 475, 476), total and permanent disability (§ 473), double total permanent disability (§ 473), partial and temporary disability (§ 476) and partial and permanent disability (§ 474) and their percentage degrees.

" The Act of 1933, pursuant to which the Veterans Regulations [3 and later 3 (a)] were adopted, repealed all public laws granting medical or hospital treatment, domiciliary care, compensation and other allowances, pension, disability allowance or retirement pay to veterans of recent wars and their dependents," with certain exceptions not material here. (Act of March 20, 1933, ch. 3, tit. I, § 17; 48 U. S. Stat. 11 [U. S. Code, tit. 38, § 717]. Veterans' Benefits — Laws, Constructions, Regulations — West Publishing Co., 1946, pp. 662, 826.) Insofar as material, section 717 reads as follows: " All public laws granting medical or hospital treatment, domiciliary care, compensation and other allowances, pension, disability allowance, or retirement pay to veterans * * * are hereby repealed * * *. The Administrator of Veterans' Affairs under the general direction of the President shall immediately cause to be reviewed all allowed claims under the above-referred-to laws and where a person is found entitled under sections 701–703, 704, 705, 706, 707–715, 716–721 of this title, and sections 30a, 485 of Title 5, authorize payment or allowance of benefits in

accordance with the provisions of sections 701–703, 704, 705, 706, 707–715, 716–721 of this title, and sections 30a, 485 of Title 5 commencing with July 1, 1933, and notwithstanding the provisions of section 709 of this title, no further claim in such cases shall be required  *  *  *."

Thus when we said that the finding of the VA (1) as to disablement in war duty, and (2) as to " the nature or character and degree " of a veteran's disability were not subject to rebuttal, we were referring to the finding that the disablement was temporary or permanent and partial or total and its percentage degree. That is why the words " nature or character and degree " were used and that is clear as soon as the statutory situation is understood. In the *Potts* case (*supra*) we accepted those findings as not subject to rebuttal. So are the findings of the VA to be accepted here. Those findings, as made within the competency of the VA, are and always have been that the extent and degree of the disability of each of those complained of here is less than 10%. That finding must be accepted both by the veteran and the court. As soon as disability is evaluated as less than 10% under the schedule of ratings of the VA in accordance with experience (Executive Orders Nos. 6091 and 6157) it is beyond the competency of the VA to recognize or certify to its extent, percentage or grade, insofar as section 6 of article V of our Constitution is concerned, and it has not attempted to do so here.

Executive Order No. 6091 was superseded by Executive Order No. 6157 promulgated June 6, 1933, and known as Veterans' Regulation No. 3 (a) which provides for a schedule so constructed " as to provide ten grades of disability and no more ".

The other passage from the opinion in the *Potts* case (*supra*) which we think has been misintepreted by counsel is the following (p. 117): " The purpose of the constitutional amendment and of the statute enacted in pursuance of it does not, according to our interpretation, refer to disabilities which impair earning capacity. Rather, as we think, it points toward a reward for one who had, even in a slight degree, sustained in war service some *physical depreciation* which the *Federal government* had *recognized as such* and whose impaired physique *due to such recognized illness,* disease or wound has *continued to exist.* As we view it, the statute bears no relation to earning power."

(Emphasis supplied.)    The first question certified to us for answer was " Should the word ' disability ' as used in section 21 of the Civil Service Law, be interpreted as meaning a disability that materially impairs the applicant's earning capacity? "

We were asked whether the word " disability " as used by the Legislature was to be interpreted as one which materially impaired the earning capacity of the applicant and we had to make a choice between saying that a man was not disabled regardless of the extent of his injury if his earning capacity were not affected or of saying that he was disabled if he had suffered impaired physique or lessening of bodily force or a disfigurement by reason of war-incurred illness, disease or wound even though his earning capacity had not been materially affected.    We properly said that the determining factor was the injury to the veteran's body and not to his earning capacity. Section 21 of the Civil Service Law (as amd. by L. 1930, ch. 374) was the act to implement the constitutional amendment of 1929. That amendment had made the determining factors: disability in actual performance of duty in war to an *extent recognized* by the United States Veterans' Bureau and the existence of the disability at the time of application for appointment or promotion.

Our electorate, then, left the determination of disability entitling a veteran to preference to certifications to be made by VA within the four corners of its competency.    That kind of disability under the Congressional Act (March 20, 1933) and the Executive Order of the President of the United States (Veterans Regulation No. 3 [a]) is to be a disability certified as to extent by the VA at 10% or more.    The VA has no competency to recognize the *extent* of any disability of less than 10%.    It is directed to disregard it.    Concededly the appellants here are those who have disabilities not recognizable or certifiable by the VA as being 10% or more.    Congress and the President have taken that question out of the realm of words and phrasing and have fixed the physical disability as only that which equals 10% in extent or degree.

The justification which has been urged for the new form of certificate devised by the Commission, which purports to certify to the present existence of a disability without reference to its extent as required by our Constitution, is section 851 of title 5 of

the United States Code, enacted June 27, 1944. That section provides that, in certification for appointment, preference shall be given to " (1) those ex-service men and women who have served on active duty in any branch of the armed forces of the United States and have been separated therefrom under honorable conditions and who have established the present existence of a service-connected disability *or* who are receiving compensation, disability retirement benefits, or pension by reason of public laws administered by the Veterans' Administration, the War Department or the Navy Department ". (Emphasis supplied.) It will be noted that there is a distinction made between those who have established " the present existence of a service-connected disability " and those who are receiving compensation or pension benefits " by reason of public laws administered by the Veterans' Administration ", and that those two divisions are separated by the disjunctive " or ". In our constitutional· amendment the voters were careful to provide for the certification of the present existence of a disability *and* of its extent by the VA using the conjunctive " and ".

Under section 851 the present existence of the service-connected disability is to be established to the satisfaction of the United States Civil Service Commission. Ten points were to be added for disability preference and five points for non-disability preference.

The reasons for the passage of the act (§ 851) entitled " An Act to give honorably discharged veterans, their widows, and the wives of disabled veterans, who themselves are not qualified, preference in employment where Federal funds are disbursed " will be found at pages 1153 to 1159 of United States Code Congressional Service, 78th Congress, Second Session, 1944. The Act will be found at page 400 of the same volume. It became chapter 287, Public Law 359. It will be found in chapter 17 of title 5 of the United States Code, Executive Departments and Government Officers and Employees. (See, also, 58 U. S. Stat. 387.)

In United States Code Congressional Service (pp. 1156–1159, *supra*) will be found the letter of the President of the United States under date of February 26, 1944, to the chairman of the Civil Service Committee of the House of Representatives and the letter to the same chairman by the United States Civil

Service Commission under date of February 8, 1944. Those letters show the general civil service purpose of the act. There is also a letter to the same chairman on page 1158 from representatives of the three major veterans' organizations supporting the bill. It had nothing to do with the VA or the public laws administered by it. It was a civil service matter as the letter from the President of the United States, already referred to, clearly establishes. It has no relevancy to section 6 of article V of our Constitution, referring to a veteran " who was disabled therein [the war] to an extent certified by the United States veterans administration ". Section 851 shows that on its face by the use of the disjunctive " or ".

Finally, it is urged upon us that a regulation promulgated by the United States Veterans' Administrator authorizing an evaluation of less than 10% " for purposes of Civil Service preference " is helpful to respondents. This, of course, was a regulation which was amended in 1946, long after the adoption of our State constitutional amendment now section 6 of article V. The following is the regulation with the amendment of 1946 italicized: " (b) For the purposes of the 1933 and 1945 schedules, a disability under any diagnostic classification which does not meet the minimum rating schedule standard under that classification will be rated as no percent, *except for purposes of Civil Service preference, in which event an evaluation of less than ten percent may be made.*" (Code of Fed. Reg. [1946 Supp.], tit. 38, § 2.1158, as amd. Sept. 17, 1946; 11 Federal Register 10829.)

Assuming that the administrator had the power to so amend the regulation under the Congressional Act and Presidential Regulation to which reference has been made (*supra*) it affected only the United States civil service and enabled the VA to establish the present existence of a disability under the first portion of section 851 quoted (*supra*) which could have been determined by the United States Civil Service Commission under that section. It effected no amendment of section 6 of article V of our State Constitution.

In the record there appears under date of September 29, 1947, a letter from the VA to the Commission when the Commission was endeavoring to have the VA depart from its settled practice and inaugurate the use of the new form of certificate. The letter in part says:

"As you know specific evaluations of disability between 0% and 10% are not presently made by the Administration there being no criteria under our official schedule for making such intermediate evaluations. The only possible specific evaluation below 10% would, therefore, be 0%.

"With reference to your suggestion as to the inclusion in the certificate of a statement that the existing disability is rated ' less than 10% but more than 0% ', after careful study of this matter I am of the opinion that a statement of this form would be impracticable. For compensation or pension purposes all disabilities not rated 10% or more are evaluated as 0% disabling. The authority contained in the regulations of the Veterans Administration to make evaluations of ' less than 10% ' for civil service purposes was granted primarily to meet the needs of the United States Civil Service Commission and for the purpose of that Commission certificates of disability are issued by this Administration when residuals of a service connected disability are ascertainable on medical examination acceptable to the Administration. No other evaluation or criteria on which to base such evaluation has been authorized for civil service purposes."

Finally, it is urged that twenty-eight applicants " lost " their preference "at the hands of the Veterans Administration " when revised certificates were issued following our decision in the *Winternitz* case (*supra*). There is no denial of the fact, however, that in seventeen of those cases the original certificates specifically showed that the condition claimed was "non-disabling " and that in nine of the remaining eleven cases the VA had reported that it could not determine without further examination of the applicant whether there was a presently existing disability.

The order should be affirmed, with costs.

FULD, J. (dissenting). With the important and far-reaching decision which the court is here making I cannot agree. I am persuaded that a construction has been given to section 6 of article V of the State Constitution which its words cannot be made to bear.

A number of eligibles on a civil service promotion list, all honorably discharged veterans, applied to the Municipal Civil

Service Commission of the City of New York for disabled veterans' preference. As to each of those here involved, the United States Veterans' Administration certified (1) that he had sustained a disability in the war and (2) that that disability was a present and existing one. On the strength of that certification, the Civil Service Commission granted the requested preference. Others on the list — non-disabled veterans and nonveterans — protested that action and brought this proceeding under article 78 of the Civil Practice Act to review the Commission's determination; some of those accorded a disabled veterans' preference intervened as defendants. The courts below annulled the Commission's determination, holding that a disability to be recognized as such must be a disability which the Veterans' Administration has rated at 10% or more.

The appeal calls for construction of the recently adopted constitutional amendment relating to civil service appointments and promotions and, in brief, requires us to define the meaning of the word " disability " contained therein and to determine whether the certificate of the Veterans' Administration to the effect that the applicant was disabled in war and that his disability is present and existing entitles him to a preference or whether the certificate must establish that the applicant has a disability of at least 10%.

Our problem is illumined by a consideration of the 1929 constitutional provision, the predecessor of the current amendment. That 1929 amendment (art. V, § 6) granted " honorably discharged soldiers, sailors, marines or nurses of the army, navy or marine corps " civil service preference if the veteran (1) was " disabled in the actual performance of duty in any war, to an extent recognized by the United States Veterans' Bureau " and (2) the " disability exists at the time of his or her application for such appointment or promotion ".

Provisions of the 1929 amendment and its companion statute (Civil Service Law, § 21) were brought before this court for construction in 1934, in *Matter of Potts* v. *Kaplan* (264 N. Y. 110, 113), on certified questions, one of them in this form: " Should the word ' disability ' as used in section 21 of the Civil Service Law, be interpreted as meaning a disability that materially impairs the applicant's earning capacity? " The court answered that question in the negative, declaring, in the course of its opinion, that

1. On the question whether the veteran had been disabled in war, the Veterans' Bureau's certification was conclusive and nonrebuttable. Thus, the court wrote (p. 117): "the Civil Service Commission and the appointing officer must accept at their face value certificates issued by the Veterans' Bureau or its successor, the Veterans' Administration. * * * For the purpose of determining the fact of disability in war, the State has designated that body as its agent. That the applicant whose name appears on such a certificate has been disabled in actual performance of duty in war and that the nature or character and degree of his disability were such as that body has recognized is evidence not subject to rebuttal. The certificate on these facts is conclusive."

2. As to the question whether the disability exists at the time of application, the court held that the determination of that matter was for the civil service authorities (p. 117).

3. In addition, the court supplied its own definition of the term "disability" as a guide to civil service commissions in ruling on whether a disablement existed at the time of application. First, it rejected the contention that the disablement must "impair earning capacity" and, then laid down, in these words, the requirement that to be a disability the condition must result in "Some lessening of bodily force or some disfigurement, even if unrelated to capacity for wage earning but present at the time of application for a preference" (pp. 117-118).

Presumably aware of that construction of the 1929 amendment, the electorate and the Legislature — in 1945 and 1946 — replaced it with the present constitutional provision and conformed the implementing statute (N. Y. Const., art. V, § 6; Civil Service Law, § 21; L. 1946, ch. 521). The present constitutional amendment grants preference to a member of the armed forces who served therein in time of war and

(1) "who was disabled therein to an extent certified by the United States veterans administration", and

(2) "whose disability is certified by the United States veterans administration to be in existence at the time of his or her application for appointment or promotion".

In the implementing Civil Service Law provision, a "disabled veteran" is defined as one who has "a disability which is

certified by the United States veterans' administration to have been incurred in time of war and to be in existence at the time of application for appointment or promotion ".

In terms of the *Potts* case (*supra*), the effect of the new provision is (1) to leave unaltered the 1929 requirement that the Veterans' Administration is to certify whether the veteran was disabled in war; (2) to authorize the Veterans' Administration — instead of the various local civil service authorities — to determine whether there is an existing disability; and (3) to render certification by the Veterans' Administration conclusive as to both the existence of a disability and that it was war sustained. (See, also, *Matter of Winternitz* v. *Morton,* 272 App. Div. 339, 340, affd. 297 N. Y. 541.)

Read as they were written, the Constitution and its implementing statute command that a preference be accorded a veteran for civil service purposes upon producing a certificate of the Veterans' Administration stating that he was disabled in the war and that that disability is in existence at the time of his application for appointment or promotion. No other requirement or test is imposed upon a veteran who seeks to qualify for such preference. Neither the language nor the history of the enactments suggests that distinctions are to be drawn between lesser and greater disabilities, or that the courts may review or disregard the certification that there is a " disability now in existence ".

Of course, the certificate must affirmatively recite that a disability exists, and that requirement is not satisfied, we recently held, by the confusing and equivocal recital that there is a " 0% disability ". (See *Matter of Winternitz* v. *Morton, supra.*) As a result of the *Winternitz* decision, new certificate forms were prepared, and those are the forms now in use. They contain four questions. The first two specifically relate to the facts which, the Constitution specified, are to be certified by the Veterans' Administration:

" 1) Did the applicant sustain a war service connected disability?

" 2) Is that disability now in existence? "

The other two questions are neither required nor suggested by the Constitution: " 3) What is the disability? " and " 4) If the percentage of disability is 10 or more, state percentage."

In all of the certificates before us, the first two questions were answered in the affirmative. Nevertheless, petititioners contend that since the disability was not rated at 10% or more, the certificates do not establish appellants' rights to preference since they certify existing disabilities of a less degree than those necessary to entitle the applicants to Federal compensation benefits. No question is raised by them as to the propriety or sufficiency of the certification insofar as it establishes that the disablement occurred in war. Their argument is that the Veterans' Administration has no authority to certify an existing disability of less than 10%, because that figure is the minimum percentage for Federal disability compensation, and, hence, that certifications of disabilities rated at " less than 10% " are tantamount to certifications of " 0% ", that is, no disability at all.

In my view, the language of both Constitution and statute is flatly opposed to such a conclusion. Nothing in either enactment requires — or even suggests — that any minimum degree of physical disablement has to exist at the time of application; to be significant, the disability must simply be certified by the Veterans' Administration to be presently in existence. In my judgment, the affirmative answers to the first two questions constituted categorical and unequivocal certification that there was a war disability and that it was presently in existence. Those were the only facts rendered operative and vital by the Constitution. The information sought by the other two questions, relating as they do to items irrelevant and inconsequential, are entirely superfluous and should be so regarded.

This court clearly held in the *Potts* case (*supra*), that the certification of the Veterans' Bureau was conclusive and non-rebuttable as to the one matter which the State had, by the current constitutional provision, then assigned to it for determination. The new constitutional provision, as already indicated, designates the Veterans' Administration as its agent to determine not only whether the disability was war sustained but also whether it is present and existing. On the basis of both reason and authority, the courts as well as the various civil service agencies are compelled to assign the same degree of conclusiveness to the certification that there is an existing dis-

ability as to the certification that it is service connected. Neither civil service agency nor court may go behind that certification to challenge the existence of the disability as certified by the Veterans' Administration.

Beyond that, even if we should look behind the certification and even if we should insist that the definition of '' disability '' formulated in the *Potts* case (*supra*) be satisfied before the Veterans' Administration may properly certify an applicant, I am persuaded that the appellants' certificates are valid.

First, the record discloses that the question relating to present disability is never answered in the affirmative by the Veterans' Administration's field agents unless the condition involves '' some impairment of the organ or function affected.'' This information comes to us from the director of claims of the Veterans' Administration; in a letter which he sent to the Civil Service Commission, he wrote: '' The certificates presently in use by New York State and local Commissions call, among other things, for a statement as to whether the veteran has a service-connected disability now in existence. When a veteran's disability is not rated at 10% or more and this question is answered in the affirmative it means that the veteran has a service-connected disability of some degree, however slight, in existence at the time the certification is made. *Under the most recent instructions issued to field stations by this office, this question will not be answered affirmatively in such cases unless there is shown to presently exist some impairment of the organ or function affected.* The disability may range in scope from one of extremely slight proportions to one falling just short of being evaluated at 10%. *Unless the minimum requirement above outlined is met the existence of disability will not be certified by this Administration.''* (Emphasis supplied.)

This furnishes a complete answer to the claim that the failure of the Veterans' Administration to rate a disability at 10% or more is tantamount to a finding that no disability exists as a matter of fact. Residual disabilities, presently existing, are, it is clear, typically and uniformly carried as '' less than 10% '';
that description is meant to indicate some lessening of bodily force, some impairment of functioning, in short, some disability.

Second, the definition of disability employed by the Veterans' Administration — '' some impairment of the organ or function

affected " — is practically identical with the test laid down in the *Potts* case (*supra*) — namely, " Some lessening of bodily force or some disfigurement " (264 N. Y., at p. 117). Thus, besides having satisfied the mandate of the Constitution, the certificates comply with the requirements of " disability " as defined and long recognized by this court.

Third, appellants do, in point of fact, have pragmatic and ascertainable disabilities. After our *Winternitz* decision (*supra*), they were rerated on the new-type forms, and their certificates now affirmatively indicate that they have existing disabilities. When it is borne in mind that twenty-eight other applicants were dropped from the disabled list during that rerating process, it becomes clear that the Veterans' Administration's standards are practical and meaningful. Only by ascribing illegal motives or capricious methods to that agency can we escape the conclusion that some basis existed for distinction between the two groups, and that the applicants who were retained as disabled do, in fact, suffer from existing disabilities.

Underlying the conclusion that only disabilities rated at 10% or more can be considered for present purposes is the view expressed in the opinion of the majority, that the Veterans' Administration " has no power to certify a grade of disability of less than 10% " (*supra*, p. 373; see, also, 273 App. Div., at p. 248). Such a view is based upon the assumption that the Veterans' Administration has power to deal only with matters touching on compensation and to rate veterans only for compensation purposes, which demands an evaluation beginning at 10% disability.

That is not so.

In the first place, as we have seen from a consideration of the *Potts* case (*supra*), the Veterans' Administration had the power to recognize and certify to the civil service authorities any disability that was service connected. Its degree or seriousness, whether it impaired " earning power ", was of no consequence. Whether or no the veteran might be entitled to compensation depended upon other considerations which played no part in the Veterans' Administration's act of certifying the fact of disablement to the civil service agencies. Indeed, in the *Potts* case, some of the very certificates issued by the Veterans' Bureau referred to a " 0% " or " less than 10% " disability

(264 N. Y., at pp. 115–116), and, nevertheless, this court treated those certificates insofar as they recited the fact that the veteran had been disabled in war — as conclusive and '' not subject 'to rebuttal '' (264 N. Y. at p. 117). Certainly, that constituted unmistakable recognition of the authority of the Veterans' Bureau to issue the certificates which this court is now declaring are beyond its competence.

In the second place, while, as stated, for purposes of receiving compensation, a veteran must be disabled to the extent of 10% (Veterans' Regulation No. 3[a], promulgated under authority of Act of March 20, 1933, § 3; 49 U. S. Stat. 9), such 10% disability has meaning only so far as compensation is concerned; it is of no consequence or significance insofar as civil service preference is concerned. Such an award is related to impairment of earning capacity and unless there is a disability of at least 10%, compensation will not be given. But there is, of course, a difference between the allowance of a preference for civil service purposes and the grant of compensation. For instance — and I consider it of the highest significance — a veteran is given a preference in Federal civil service even though he does not receive compensation, even though, in other words, he does not have a rated disability of 10% or higher. This clearly appears from the Federal Veterans' Preference Act of 1944 (U. S. Code, tit. 5, § 851), which provides that Federal civil service preference is to be given to disabled veterans, '' who have established the present existence of a service-connected disability *OR* who are receiving compensation ''. Thus, the mere existence of a war-connected disability entitles the veteran to a prefer- ence; receipt of Federal compensation, which at present demands at least a 10% disability, is not an additional require- ment.

In short, the Veterans' Administration has a two-fold func- tion: (1) in determining a veteran's eligibility for compensation awards, it is under the necessity of rating them as to disability in 10% multiples (Executive Order No. 6157; U. S. Code [1940 ed.], tit. 38, ch. 12, p. 3327 [Code of Fed. Reg., tit. 38, § 35.03]); (2) in determining — or helping in the determination of — their civil service standings, it is under the necessity of deciding whether they have any existing disability — not 10% — and

evaluating that disability. (See, e.g., Federal Personnel Manual of United States Civil Service Commission [March 25, 1948], Table VII, ch. V1, pp. V1-26, V1-27.)

And if more be needed to establish the Veterans' Administration's competency to recognize and certify a disability of less than 10%, it is at hand. In so many words and by explicit language, the Veterans' Administration is given express authority — by virtue of a regulation which the United States Veterans' Administrator promulgated — to evaluate a disability at less than 10% " for purposes of Civil Service Preference ". The regulation reads in this way (Code of Fed. Reg. [1946 Supp.], tit. 38, § 2.1158, as amd. Sept. 17, 1946; 11 Federal Register 10829) : " (b) For the purposes of the 1933 and 1945 schedules, a disability under any diagnostic classification which does not meet the minimum rating schedule standard under that classification will be rated as no per cent, *except for purposes of Civil Service preference, in which event an evaluation of less than ten percent* may be made." (1946 amendment emphasized.)

In the light of such a regulation, it is impossible to maintain that the Veterans' Administration lacked the power or competency to certify veterans as having a present disability merely because they were rated at less than 10%. If the court is correct in ruling that this regulation empowers the Veterans' Administration to certify the veteran's disability only to the Federal Civil Service Commission and does not endow it with authority to issue a similar certification to non-Federal civil service agencies, then one seeks in vain for any provision vesting the Veterans' Administration with authority to certify to such other bodies even a disability of 10%.

It seems to me that the court reaches the conclusion that it has only by rearranging the language of the constitutional amendment and then assigning to such language as rearranged a meaning never designed or intended for it. As the constitutional provision was written, a preference is accorded a member of the armed forces who served therein in time of war " and who was disabled therein *to an extent* certified by the United States veterans administration, and whose disability is certified by the United States veterans administration to be in existence at the time of his or her application for appointment or promotion ". The phrase " to an extent ", it will be noted, is used only

in the first part of the provision and only in connection with disablement sustained in war. The court, however, does two things with that phrase. It first inserts it into the latter portion of the provision and thereby relates it to the present and existing disability there mentioned. And, second, it uses the phrase thus inserted as a basis for importing into the provision a requirement that the Veterans' Administration may not certify a disability unless such disability exists to an *appreciable* or *serious* extent, which, in turn, the court defines as a disability of 10%. There is, however, not the slightest suggestion in either Constitution or statute that, to entitle the veteran to the preference, he must be suffering from a serious disability or be receiving compensation from the Federal Government. Perhaps, to treat veterans who have minor ailments the same as those seriously handicapped may be considered unfair; perhaps, too, to treat non-disabled veterans who have served in the armed forces in time of war for one day the same — for purposes of preference — as those who fought in the field for years may likewise be considered undesirable. But that is precisely what the constitutional amendment provides — and a court may not rewrite it to accomplish what may appear to be a more desirable result.

To recapitulate:

(1) The Constitution and Civil Service Law command that preference be given honorably discharged veterans if they are certified by the Veterans' Administration to have existing service-connected or war-sustained disabilities;

(2) The Veterans' Administration has, in this case, certified such disabilities for each of the appellants;

(3) These certificates are conclusive and nonrebuttable, under the authority of the *Potts* case (*supra*), and cannot be attacked on the ground that they are based upon an improper definition of " disability ";

(4) Even, however, if it were pertinent to review the basis on which the certificates were issued, they would stand, for the Veterans' Administration employs the same test in rating veterans as disabled as this court approved in the *Potts* case;

(5) A rating of " less than 10% " disability is warranted and represents something more than " 0% " disability;

(6) Such a rating of "less than 10%" is within the competency and authority of the Veterans' Administration to make; and, finally,

(7) Whether a veteran is receiving compensation from the Government or not is of no consequence whatsoever in determining his right to a civil service preference under the Constitution and the Civil Service Law.

To affirm in this case, we must hold that the Constitution and the Civil Service Law provide an honorably discharged member of the armed forces is entitled to a disabled veteran's preference only if the Veterans' Administration certifies that he has a present existing disability rated at 10% or more. To that I cannot subscribe.

The order should be reversed, and the petition dismissed, with costs in all courts.

LEWIS, THACHER and DYE, JJ., concur with CONWAY, J.; FULD, J., dissents in opinion in which LOUGHRAN, Ch. J., and DESMOND, J., concur.

Order affirmed.