Chief Judge Desmond.
In 1951 and again in 1955 the Board of Regents, governing body of our State public school system, recommended to all local school boards that “ at the commencement of each school day the act of allegiance to the Flag might well be joined with this act of reverence to God: ‘ Almighty God, we acknowledge our dependence upon Thee, and we beg Thy blessings upon us, our parents, our teachers and our Country ’ ’ ’. In 1958 the respondents, who are the board members of a public school district in Nassau County, conformed to the Regents’ recommendation and gave instructions to the teaching staff to adopt the practice in the district’s schools. Petitioners, taxpayers in the district and parents of children attending the schools and all (except one “ non-believer ”) being members of various religious bodies, brought this proceeding for an order directing the board to discontinue the practice. They assert that it is unlawful because of the prohibitions of the First Amendment (“no law respecting an establishment of religion, or prohibiting the free exercise thereof ”) and the command of section 3 of article I of our State Constitution (“ The free exercise and enjoyment of religious profession and worship, without discrimination or preference, shall forever be allowed in this state to all mankind”).
The order here appealed from contains adequate provisions to insure that no pupil need take part in or be present during the act of reverence, so any question of “ compulsion ” qv *180 “ free exercise ” is out of the case (see Zorach v. Claus on, 343 U. S. 306).
What remains of appellants ’ argument is this: that the saying of the “ Regents prayer ” as a daily school exercise is a form of State-sponsored religious education and is accordingly an unconstitutional “establishment of religion”. If the utterance of these reverential words was “ religious education ”, then providing such education would be so far beyond the powers of a public school board as to be wholly arbitrary and unlawful, so that the courts would need no constitutional warrant for forbidding it. But it is not “religious education” nor is it the practice of or establishment of religion in any reasonable meaning of those phrases. Saying this simple prayer may be, according to the broadest possible dictionary definition, an act of “ religion ”, but when the Founding Fathers prohibited an ‘1 establishment of religion ’ ’ they were referring to official adoption of, or favor to, one or more sects. They could not have meant to prohibit mere professions of belief in God for, if that were so, they themselves in many ways were violating their rule when and after they adopted it. Not only is this prayer not a violation of the First Amendment (no decision of this or of the United States Supreme Court says or suggests that it is) but a holding that it is such a violation would be in defiance of all American history, and such a holding would destroy a part of the essential foundation of the American governmental structure.
The “ Regents prayer ” is an acknowledgment of our dependence upon Almighty God and a petition for the bestowal of His blessings. It includes an acknowledgment of the existence of a Supreme Being just as does the Declaration of Independence and the Constitutions of each of the 50 States of the Union, including our own. In construing even a Constitution some attention must be paid to the obvious intent of those who drafted it and adopted it (Matter of Carey v. Morton, 297 N. Y. 361). That the First Amendnient was ever intended to forbid as an “ establishment of religion ’ ’ a simple declaration of belief in God is so contrary to history as to be impossible of acceptance. No historical fact is so easy to prove by literally countless illustrations as the fact that belief and trust in a Supreme Being was from the beginning and has been continu *181 ously part of the very essence of the American plan of government and society. The references to the Deity in the Declaration of Independence; the words of our National Anthem: “ In God is our trust ’ ’; the motto on our coins; the daily prayers in Congress; the universal practice in official oaths of calling upon God to witness the truth; the official thanksgiving proclamations beginning with those of the Continental Congress and the First Congress of the United States and continuing till the present; the provisions for chaplaincies in the armed forces; the directions by Congress in modern times for a National Day of Prayer and for the insertion of the words “ under God ” in the Pledge of Allegiance to the Flag; innumerable solemn utterances by our Presidents and other leaders — all these and many more make historically unescapable the flat statement in Zorach v. Clauson (343 U. S. 306, 313, supra [1952]) that: “We are a religious people whose institutions presuppose a Supreme Being ”, which paraphrased the Supreme Court’s similar assertion in 1892 in the Holy Trinity Church case (Holy Trinity Church v. United States, 143 U. S. 457). As Justice Beldock of the Appellate Division wrote in this case: “ The contention that acknowledgments of and references to Almighty God are acceptable and desirable in all other phases of our public life but not in our public schools is, in my judgment, an attempt to stretch far beyond its breaking point the principle of separation of church and State and to obscure one’s vision to the universally accepted tradition that ours is a Nation founded and nurtured upon belief in God.”
The “ universally accepted tradition ” referred to by Justice Beldock has been maintained without break from the days of the Founding Fathers, all of whom believed in the existence of God (see Cousins, In God We Trust), to the day of the inauguration of President Kennedy. It is an indisputable and historically provable fact that belief and trust in a Creator has always been regarded as an integral and inseparable part of the fabric of our fundamental institutions. It is not a matter of majority power or minority protection. Belief in a Supreme Being is as essential and permanent a feature of the American governmental system as is freedom of worship, equality under the law and due process of law. Like them it is an American absolute, an application of the natural law beliefs on which the *182 Republic was founded and which in turn presuppose an Omnipotent Being.
The motives and purposes of the Regents and of the local board are noble. The success of the practice is problematical. But there is no problem of constitutionality.
The order should be affirmed, without costs.