[882 NYS2d 610]

MURRAY J.S. KIRSHTEIN, as Guardian and Administrator of the Estate of GEORGE J. TAPPER, Deceased, Respondent, v AMERICU CREDIT UNION (Formerly UP STATE FEDERAL CREDIT UNION) et al., Defendants. (And a Third-Party Action.) (Action No. 1.)

MURRAY J.S. KIRSHTEIN, as Administrator of the Estate of GEORGE J. TAPPER, Deceased, Respondent, v GENERAL ELECTRIC COMPANY et al., Defendants. GENERAL ELECTRIC COMPANY, Third-Party Plaintiff, v AMERICU CREDIT UNION (Formerly UP STATE FEDERAL CREDIT UNION), Third-Party Defendant-Appellant. (Action No. 2.)

Fourth Department, June 12, 2009

APPEARANCES OF COUNSEL

*Nasto Law Firm*, Yorkville (*John A. Nasto, Jr.*, of counsel), for appellant.

*Rossi and Murnane*, New York Mills (*Vincent J. Rossi, Jr.*, of counsel), for respondent.

## OPINION OF THE COURT

CENTRA, J.

Plaintiff, as guardian and administrator of the estate of George J. Tapper (decedent), commenced two actions to recover damages for the allegedly improper transfers of securities owned by decedent. In 1998 decedent transferred certain shares of stock of several corporations to a third party, and his signatures on the transfers were allegedly guaranteed by AmeriCU Credit Union, formerly Up State Federal Credit Union (AmeriCU), a defendant and third-party plaintiff in action No. 1 and the third-party defendant in action No. 2. At the time of the transfers, decedent had not been adjudicated an incompetent person and no guardian had been appointed for him, but plaintiff alleged that decedent was mentally incapacitated due to Alzheimer's disease and the infirmities of old age. Plaintiff was appointed guardian of decedent's property in May 2000, and decedent died on December 2, 2001.

Plaintiff commenced action No. 1 against AmeriCU and its vice-president in April 2002, and he commenced action No. 2 in

April 2004 against, inter alia, General Electric Company, Loews Corporation, Toys-''R''-Us, Inc. and Wachovia Corporation (collectively, corporate defendants), corporations that issued the securities. The corporate defendants and AmeriCU (collectively, defendants) moved to consolidate the two actions and for partial summary judgment dismissing the cause of action for wrongful registration under UCC 8-404. Plaintiff has acknowledged that there is only one cause of action against defendants, i.e., for wrongful registration, and thus we deem the motion of defendants to be one for summary judgment dismissing the complaint against them. Defendants now appeal from an order insofar as it denied that part of their motion for summary judgment dismissing the complaint. We conclude that the order should be affirmed.

An issuer of securities has a duty to register a transfer of securities (see UCC 8-401). Pursuant to UCC 8-404 (a) (1), an issuer of securities is liable for the wrongful registration of a transfer ''if the issuer has registered a transfer of a security to a person not entitled to it, and the transfer was registered . . . pursuant to an ineffective indorsement or instruction.'' The corporate defendants, as issuers of the securities, obtained guarantees from AmeriCU pursuant to UCC 8-402 (a) that the signatures were genuine and authorized. As guarantor of the signatures of the indorser, AmeriCU thereby warranted that the signatures were genuine, that the signer was an appropriate person to indorse, and that the signer had ''legal capacity'' to sign (UCC 8-306 [a] [3]).

An indorsement is effective if it is made by an ''appropriate person'' (UCC 8-107 [b] [1]). The term ''appropriate person'' is defined in UCC 8-107 (a) as follows:

> ''(1) with respect to an indorsement, the person specified by a security certificate or by an effective special indorsement to be entitled to the security;

> ''(2) with respect to an instruction, the registered owner of an uncertificated security;

> ''(3) with respect to an entitlement order, the entitlement holder;

> ''(4) if the person designated in paragraph (1), (2), or (3) is deceased, the designated person's successor taking under other law or the designated person's personal representative acting for the estate of the decedent; or

"(5) if the person designated in paragraph (1), (2), or (3) lacks capacity, the designated person's guardian, conservator, or other similar representative who has power under other law to transfer the security or financial asset."

The sole issue before us on this appeal concerns the definition of the term "capacity" within the meaning of UCC 8-107 (a) (5).

Defendants contend that the indorsements were effective because decedent was an "appropriate person" to make the indorsements inasmuch as he was the person specified by the security certificates to be entitled to the securities (*see* UCC 8-107 [a] [1]; [b]). According to defendants, because decedent had not been adjudicated an incompetent person and thus had no guardian, conservator, or other similar representative, he did not "lack[ ] capacity" within the meaning of UCC 8-107 (a) (5). In other words, defendants contend that the term "capacity" in UCC 8-107 (a) (5) is defined as "legal capacity," and thus that term concerns qualifications such as the age of majority and a lack of an adjudication of incompetency, not "mental capacity."

The term "capacity" is not defined by the UCC, but we note that, pursuant to UCC 1-103, "[u]nless displaced by the particular provisions of this Act, the principles of law and equity, including . . . the law relative to capacity to contract, . . . shall supplement its provisions." In attempting to determine the Legislature's intent with respect to the meaning of the term "capacity," courts should ascertain such intent "from the words and language used, and the statutory language is generally construed according to its natural and most obvious sense, without resorting to an artificial or forced construction" (McKinney's Cons Laws of NY, Book 1, Statutes § 94). We conclude that the term "capacity" as used in UCC 8-107 (a) (5) should be broadly interpreted to refer both to legal capacity and to mental capacity.

Defendants essentially contend that the term "capacity" must be construed to mean either legal capacity or mental capacity, not both, and that it would not make sense to define the term as encompassing mental capacity because that would mean, e.g., that a mentally capable 16 year old would be an appropriate person to indorse a certificate. We cannot adopt such a narrow construction of the statute. If the Legislature had meant to limit the term "capacity" to mean "legal capacity" or to require a person to be adjudicated incompetent before it could be concluded that he or she lacked capacity, the Legislature easily

could have inserted language to that effect. For example, in UCC 4-405 (1) the Legislature expressly provided that

> "[a] payor or collecting bank's authority to accept, pay or collect an item or to account for proceeds of its collection if otherwise effective is not rendered ineffective by incompetence of a customer of either bank existing at the time the item is issued or its collection is undertaken if the bank does not know *of an adjudication of incompetence*" (emphasis added).

In addition, we reject defendants' contention that, because the Legislature used the term "legal capacity" in UCC 8-306 (a) (3), it must likewise have intended that the term "capacity" in UCC 8-107 (a) (5) means "legal capacity." UCC 8-306 (a) provides that

> "[a] person who guarantees a signature of an indorser of a security certificate warrants that at the time of signing:
>
> "(1) the signature was genuine;
>
> "(2) the signer was an appropriate person to indorse . . . ; and
>
> "(3) the signer had legal capacity to sign."

UCC 8-107 (a) defines the term "appropriate person," and thus UCC 8-306 incorporates UCC 8-107 (a) (5). If defendants are correct that the term "capacity" in section 8-107 (a) (5) means only "legal capacity," then there would be no need to include subdivision (a) (3) in section 8-306. Moreover, it may be inferred that, when the Legislature used only the term "capacity" in section 8-107 (a) (5), it intended to distinguish that term from the term "legal capacity." It is a well established principle of statutory construction that "where a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded" (McKinney's Cons Laws of NY, Book 1, Statutes § 240).

As noted previously, the UCC provides that the law concerning capacity to contract supplements the UCC provisions (*see* UCC 1-103). Pursuant to the common law, "contracts of a mentally incompetent person who has not been adjudicated insane are voidable" (*Ortelere v Teachers' Retirement Bd. of City of N.Y.*, 25 NY2d 196, 202 [1969]). The contract is void-

able at the election of the incompetent person "upon recovering his [or her] reason or at the election of his [or her] committee or personal representatives or heirs" (*Verstandig v Schlaffer*, 296 NY 62, 64 [1946], *mot to amend remittitur granted* 296 NY 997 [1947]). Defendants' interpretation of the UCC, in which defendants essentially contend that a mentally incompetent person who has not been adjudicated as such cannot void the transfer, thus is in derogation of the common law.

> "The Legislature in enacting statutes is presumed to have been acquainted with the common law, and generally, statutes in derogation or in contravention thereof, are strictly construed, to the end that the common law system be changed only so far as required by the words of the act and the mischief to be remedied" (McKinney's Cons Laws of NY, Book 1, Statutes § 301 [a], Comment).

Here, had the Legislature meant what defendants contend it meant, which is in derogation of the common law, the Legislature "needed to use specific and clear language to accomplish [that] goal" (*Vucetovic v Epsom Downs, Inc.*, 10 NY3d 517, 522 [2008]), and it did not do so.

Our conclusion that the term "capacity" includes "mental capacity" is buttressed by the practice of the securities industry. Plaintiff submitted the deposition transcripts of two individuals who practice in that industry, specifically that part of the industry that concerns guaranteeing signatures. Those individuals testified that the practice of requiring signature guarantors is intended to ensure that indorsers are of legal age and sound mind. Defendants have made no showing that the Legislature intended to alter that industry practice (*see generally American Tr. Ins. Co. v Sartor*, 3 NY3d 71, 76 [2004]).

We therefore conclude that, if a person lacks mental capacity but has not been adjudicated an incompetent person and does not have a designated guardian, conservator, or other similar representative, then the person nevertheless is not an appropriate person to make an indorsement and the indorsement is therefore not effective. As Supreme Court determined in this case, the issue whether decedent lacked mental capacity at the time of the transfers is an issue to be decided by a trier of fact. Accordingly, we conclude that the order should be affirmed.

HURLBUTT, J.P., SMITH, PINE and GORSKI, JJ., concur.

It is hereby ordered that the order so appealed from is unanimously affirmed, without costs.