# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**338**

**CA 10-01313**

PRESENT: CENTRA, J.P., PERADOTTO, LINDLEY, SCONIERS, AND MARTOCHE, JJ.

---

MURRAY J.S. KIRSHTEIN, AS GUARDIAN AND AS
ADMINISTRATOR OF THE ESTATE OF GEORGE J.
TAPPER, DECEASED, PLAINTIFF-RESPONDENT,

               V                          OPINION AND ORDER

AMERICU CREDIT UNION (FORMERLY UP STATE FEDERAL
CREDIT UNION), DEFENDANT-APPELLANT,
ET AL., DEFENDANT.
(AND A THIRD-PARTY ACTION.)
(ACTION NO. 1.)

-------------------------------------------------

MURRAY J.S. KIRSHTEIN, AS ADMINISTRATOR OF THE
OF THE ESTATE OF GEORGE J. TAPPER, DECEASED,
PLAINTIFF-RESPONDENT,

               V

GENERAL ELECTRIC COMPANY, LOEWS CORPORATION,
WACHOVIA CORPORATION, DEFENDANTS-APPELLANTS,
ET AL., DEFENDANTS.
(AND A THIRD-PARTY ACTION.)
(ACTION NO. 2.)
(APPEAL NO. 1.)

---

NASTO LAW FIRM, YORKVILLE (JOHN A. NASTO, JR., OF COUNSEL), FOR
DEFENDANTS-APPELLANTS.

ROSSI AND MURNANE, NEW YORK MILLS (VINCENT J. ROSSI, JR., OF COUNSEL),
FOR PLAINTIFF-RESPONDENT.

---

Appeal from a partial order and judgment (one paper) of the
Supreme Court, Oneida County (Samuel D. Hester, J.), entered January
20, 2010. The partial order and judgment, insofar as appealed from,
awarded plaintiff shares of stock as well as accrued dividends and
interest on those dividends.

It is hereby ORDERED that the partial order and judgment so
appealed from is unanimously affirmed without costs.

Opinion by CENTRA, J.P.:

I

In appeal No. 1, defendants AmeriCU Credit Union (formerly Up State Federal Credit Union) (AmeriCu), General Electric Company (GE), Loews Corporation (Loews), and Wachovia Corporation (Wachovia) appeal from a "Partial Order and Judgment" awarding plaintiff various shares of stock of GE, Loews, and Wachovia, plus accrued dividends and interest, upon a jury verdict in favor of plaintiff on a cause of action for wrongful registration pursuant to UCC 8-404.  In appeal No. 2, defendant Toys-"R"-Us, Inc. (Toys) appeals from a judgment ordering Toys to pay plaintiff the sum of $263,017.80 with interest until the date of payment.  This appeal raises issues regarding a jury instruction and the remedy to which a plaintiff is entitled upon prevailing on a cause of action for wrongful registration.

II

The procedural background of this case is set forth in our prior decision in an appeal from an order denying the motion of the corporate defendants mentioned above, as well as AmeriCu (collectively, defendants), for summary judgment dismissing the complaint in the consolidated actions against them, which at that time had only one cause of action remaining, for wrongful registration (*Kirshtein v AmeriCU Credit Union*, 65 AD3d 147).  Following the issuance of our decision, a jury trial was held on that sole cause of action under UCC 8-404.  The evidence presented at trial established that plaintiff's decedent died on December 2, 2001 when he was 95 years old.  Four years prior to his death, i.e., between December 1997 and September 1998, decedent transferred shares of stock of GE, Loews, Wachovia, and Toys worth over $300,000 to his caregiver, who had been caring for him since June 1997.  Although no evidence was submitted regarding decedent's mental incapacity at the precise time that the transfers were made, plaintiff submitted evidence establishing that decedent was mentally incompetent both before and after the times in which those transfers were made.  Plaintiff submitted evidence that decedent was hospitalized for four days in July 1996 after a police officer found decedent sitting in his car on the shoulder of a road, disoriented.  Decedent showed signs of dementia during that hospital stay, which was documented by hospital personnel.  An attorney testified that he met with decedent in 1996 for the execution of his will, but the attorney determined that decedent did not have the mental capacity to execute a will.  Plaintiff also submitted evidence that, although decedent was taken to the emergency room in May 1997 for a broken arm, decedent did not know how he had sustained that injury.

Plaintiff also called an expert psychiatric witness, who testified that decedent's July 1996 hospitalization and May 1997 emergency room treatment showed that decedent was delusional and confused, and that he was not mentally competent.  The expert testified that the dementia was not a transitory condition, inasmuch as decedent exhibited the dementia throughout the four-day hospitalization, and it persisted in May 1997.  When decedent was moved into a nursing home in 1999, the admitting physician noted on decedent's chart that decedent had "known dementia, probably secondary to Alzheimer's Disease."  The expert opined that decedent was not able

to understand the nature of the stock transfers.

Defendants in turn called an expert witness in geriatric medicine to testify at trial.  She agreed that the hospital records indicated that decedent had dementia in July 1996, but she could not "make a statement about his competence."  She suggested that decedent's dementia could have been caused by agitation or stress from being in the hospital, and that it possibly was merely a temporary condition.

The jury found that, on the dates that decedent executed documents that transferred shares of stock to someone else, i.e., the caregiver, he lacked the mental capacity to enter into a contract.  Supreme Court thereupon ordered GE, Loews, and Wachovia to issue specified shares of stock to plaintiff, dividends that had accrued on the stock, and interest on those dividends.  Because Toys no longer had stock to issue, the court ordered it to pay plaintiff the value of the shares that were wrongfully registered, plus interest.

III

Defendants first contend that the court erred in its instruction to the jury.  The court instructed the jury that plaintiff had the burden to prove by clear and convincing evidence that, at the time of the stock transfers, decedent lacked the mental capacity to enter into a contract.  Upon plaintiff's request, the court further instructed the jury on the presumption of continuance pursuant to PJI 7:50.  That is, the court instructed the jury that, if it found "by clear and convincing evidence . . . that [decedent] lacked mental capacity at a time prior to his entering the transactions in question, the law presumes that such mental incapacity continue[d] at the time he executed those documents."

The presumption of continuance provides that "[p]roof of the existence of a person, an object, a condition or a tendency at a given time raises a presumption that it continued for as long as is usual with things of that nature" (Prince, Richardson on Evidence § 3-122 [Farrell 11th ed]; *see Cummins v County of Onondaga*, 84 NY2d 322, 326).  "There is a legal presumption of continuance.  A partnership once established is presumed to continue.  Life is presumed to exist.  Possession is presumed to continue.  The fact that a man was a gambler twenty months since, justifies the presumption that he continues to be one.  An adulterous intercourse is presumed to continue.  So of ownership and non-residence" (*Wilkins v Earle*, 44 NY 172, 192).

Although the New York Pattern Jury Instructions include an instruction for the presumption of continuance only with respect to will contests (*see* PJI 7:50), the presumption of continuance is not limited to issues of a person's capacity (*see e.g. People v Scandore*, 3 NY2d 681, 684 *and Pollock v Rapid Indus. Plastics Co.*, 113 AD2d 520 [presumption of continuance of ownership]; *MacRae v Chelsea Fibre Mills*, 145 App Div 588, 589-591 [lights were out in a storeroom, presumption that unlit condition continued]; *see also McDermott v City of New York*, 201 AD2d 339, *lv denied* 83 NY2d 761 [despite allegation that a contractor did not properly barricade an opening, presumption

of continuance charge not given to the jury because no proof that the opening had been barricaded on the last business day prior to the accident]).

We reject defendants' initial contention that the instruction should not have been given because there was no prior "adjudication" of incompetency.  There is no requirement that there be an adjudication of incompetency to warrant the instruction.  Rather, mere evidence of incompetency is sufficient, and such evidence was presented here (see generally 2 NY PJI2d 7:50, at 1420 [2011]).  Defendants next contend that, while the presumption of continuance is appropriate in will contests, it is not appropriate here because it reverses the burden of proof from establishing incapacity, as contended by plaintiff, to establishing capacity, as contended by defendants.  We note that defendants failed to preserve that contention for our review (see Fitzpatrick & Weller, Inc. v Miller, 21 AD3d 1374, 1375), but we conclude that it is without merit in any event.

We agree with defendants that the burden of proof in will contests is different from the burden of proof in this case.  Specifically, in an action to probate a will, the proponent of the will must establish the decedent's testamentary capacity once that capacity has been challenged (see e.g. Matter of Paigo, 53 AD3d 836, 838-839), while here plaintiff has the burden of establishing decedent's incapacity.  The presumption of continuance of incapacity set forth in PJI 7:50 favors the opponent in a case involving a will contest, but in this case it favors plaintiff.  In Cummins (84 NY2d at 324), the issue was whether the evidence was sufficient to support the jury's damage verdict for conscious pain and suffering where the decedent drowned after she lost control of her car and it flipped over and landed in a pond.  The Court of Appeals agreed with this Court that there was no evidence presented by the plaintiff from which the jury could infer that the decedent was conscious for any period of time following the accident (see id.).  The plaintiff argued that the presumption of continuance doctrine should be applied to establish the decedent's conscious pain and suffering because she was conscious and driving just before the accident (see id. at 326).  We had held that the presumption of continuance was not applicable because "it cannot be said that it would be usual for a driver of a car to remain conscious after the car had spun off the shoulder of the road and had turned over while dropping down an embankment, especially where the medical examiner could not say, in view of the bruises he found on the scalp of the body, whether [the] decedent was conscious before the car entered the water" (Cummins, 198 AD2d 875, 876-877).  On appeal, the Court of Appeals rejected the plaintiff's argument on the ground that it was not preserved for its review (see Cummins, 84 NY2d at 326).  The Court noted, however, that the "proposed extension and application of the so-called presumption of continuance into this conscious pain and suffering area of the law . . . would have to be weighed carefully in an appropriate case, because availability and application of the rule would affect long-standing and delicate burdens of proof and major risk and damage policy allocations" (id.).

In our view, it was proper for the court to issue the instruction to which defendants object in this case. The jurors here were instructed, in accordance with well-settled law, that plaintiff had the burden to prove by clear and convincing evidence that, at the time decedent executed the transfers, he lacked the mental capacity to enter into a contract (*see Sears v First Pioneer Farm Credit, ACA*, 46 AD3d 1282, 1284-1285; *Matter of Mildred M.J.*, 43 AD3d 1391; *Feiden v Feiden*, 151 AD2d 889, 890). We conclude that the presumption of continuance instruction did not shift the burden of proof to defendants. Despite the instruction, plaintiff retained the burden to convince the jury that decedent lacked mental capacity. Indeed, as is properly the gist of the charge, it is usual that a person's capacity or incapacity at a given time continues in the future (*cf. Cummins*, 198 AD2d at 876-877).

IV

Defendants next contend that the court erred in awarding interest on the dividends issued by GE, Loews, and Wachovia. Pursuant to UCC 8-404 (b), "an issuer that is liable for wrongful registration . . . shall provide the person entitled to the security with a like certificated or uncertificated security, and any payments or distributions that the person did not receive as a result of the wrongful registration." Defendants do not dispute that the court properly awarded to plaintiff shares of stock of GE, Loews, and Wachovia, plus the dividends that had accrued, and in fact those defendants stipulated that they would provide such stock and dividends. Defendants contend, however, that plaintiff is not entitled to interest on the dividends. We reject that contention.

CPLR 5001 (a) provides that "[i]nterest shall be recovered upon a sum awarded . . . because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property . . . ." There is no provision in UCC 8-404 (b) prohibiting a court from awarding interest on the accrued dividends. In fact, that section broadly states that the person who is the victim of the wrongful registration is entitled to "any payments or distributions that the person did not receive," and we agree with the court that interest is to be included as a component of such a payment. Pursuant to UCC 1-103, "[u]nless displaced by the particular provisions of this Act, the principles of law and equity . . . shall supplement its provisions" and, pursuant to the common law, courts have awarded interest on dividends (*see Scovenna v American Tel. & Tel. Co.*, 54 Misc 2d 74, 80-82; *Hill v American Tel. & Tel. Co.*, 37 NYS2d 957, 959). We thus conclude that plaintiff is entitled to interest on the award of dividends herein, under UCC 8-404 (b) (*see generally First Natl. Bank of Boston v Hovey*, 10 Mass App Ct 715, 724-725, 412 NE2d 889, 895).

V

Finally, defendants contend that the court erred in awarding plaintiff a monetary sum against Toys. It is undisputed that Toys was unable to issue shares of stock to plaintiff, inasmuch as Toys was acquired by an investment group as the result of a merger transaction

in July 2005 and all outstanding shares of Toys' stock were at that time converted into a specified monetary amount per share. The holders of Toys' stock prior to the merger were divested of corporate ownership and received the monetary amount of their shares, and post-merger Toys' stock is not traded on a public market or exchange.

As set forth above, UCC 8-404 (b) provides that an entity liable for wrongful registration must issue to the person entitled to the security, inter alia, "a like certificated or uncertificated security" to the person making the demand. That section further provides that, "[i]f an overissue would result, the issuer's liability to provide the person with a like security is governed by [s]ection 8-210" (*id.*). Section 8-210 (a) in turn defines an "overissue" as "the issue of securities in excess of the amount the issuer has corporate power to issue" and, significantly, section 8-210 (d) provides that, "[i]f a security is not reasonably available for purchase, a person entitled to issue or validation may recover from the issuer the price the person or the last purchaser for value paid for it with interest from the date of the person's demand."

Toys contended at trial and continues to contend on appeal that there was no "overissue" here and thus that plaintiff is not entitled to the remedy set forth in section 8-210 (d). Toys, however, also correctly contends that it cannot issue stock to plaintiff. Thus, according to Toys' contentions, plaintiff is thereby left with no remedy for the wrongful registration by Toys. We cannot condone that unconscionable result. Rather, under such circumstances, we are compelled to conclude that the court properly issued a monetary award to plaintiff in accordance with UCC 8-210 (d). We note that, under the common law, an entity with no shares of stock to transfer was required to pay the person who would have been entitled to such shares the monetary value of the shares (*see Pollock v National Bank*, 7 NY 274, 279) and, as we previously noted, the Uniform Commercial Code provides that, "[u]nless displaced by the particular provisions of this Act, the principles of law and equity . . . shall supplement its provisions" (UCC 1-103). While it is perhaps unfortunate that UCC 8-404 (b) identifies only an "overissue" as an exception to the rule that stock must be transferred, we nevertheless conclude that a case such as this, in which there are no longer any shares of stock to transfer to the person entitled to receive them, is similar to the case of an overissue. Indeed, in the event of an overissue, the entity does not have the "corporate power to issue" the security (UCC 8-210 [a]) and, similarly, Toys no longer has the authority to issue any stock to plaintiff in view of the aforementioned merger transaction. Moreover, like the trial court, we agree that it is appropriate to rely on UCC 1-106 (1), in which the Legislature made clear that "[t]he remedies provided by [the Uniform Commercial Code] shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed . . . ." Thus, in light thereof, we conclude that plaintiff is entitled to receive the monetary value of the shares to which he is entitled because he otherwise is left with no remedy against Toys.

VI

     Accordingly, the partial order and judgment in appeal No. 1 and
the judgment in appeal No. 2 should be affirmed.

Entered:  March 25, 2011                     Patricia L. Morgan
                                             Clerk of the Court