Hernandez v State of New York (2019 NY Slip Op 04065)





Hernandez v State of New York


2019 NY Slip Op 04065


Decided on May 23, 2019


Appellate Division, Third Department


Clark, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 23, 2019

526866

[*1]CRISPIN HERNANDEZ et al., Appellants,
v
STATE OF NEW YORK et al., Appellants, and NEW YORK FARM BUREAU, INC., Respondent.

Calendar Date: February 11, 2019

Before: Garry, P.J., Lynch, Clark, Devine and Pritzker, JJ.


New York Civil Liberties Union Foundation, New York City (Erin Beth Harrist of counsel), for Crispin Hernandez and others, appellants.
Letitia James, Attorney General, Albany (Joseph M. Spadola of counsel), for State of New York and another, appellants.
Bond Schoeneck & King PLLC, Syracuse (Brian J. Butler of counsel), for respondent.
Centro de los Derechos del Migrante, Inc., Baltimore, Maryland (Naomi B. Campbell of counsel), for Advocates for Basic Legal Equality, Inc. and others, amici curiae.
Powers and Santola, LLP, Albany (Michael J. Hutter of counsel) and Jonathan Wood, Arlington, Virginia, admitted pro hac vice, for Pacific Legal Foundation, amicus curiae.



OPINION AND ORDER
Clark, J.
Appeal from an order of the Supreme Court (McNally Jr., J.), entered January 17, 2018 in Albany County, which granted a motion by defendant New York Farm Bureau, Inc. to dismiss the complaint against it.
In 1937, through the enactment of the State Labor Relations Act — later renamed the New York State Employment Relations Act (hereinafter SERA) (see Labor Law § 718, as renum and amended by L 1991, ch 166, § 251) — the Legislature granted employees a statutory right to organize and collectively bargain and established a comprehensive administrative framework that protects those rights, regulates the collective bargaining process and provides a forum in which employers and employees can resolve labor disputes (see Labor Law §§ 700-718; L 1937, ch 443, § 1). However, SERA's rights and protections extend to only those persons who fit within SERA's definition of "employees" (Labor Law § 701 [3] [a]). Excluded from that definition are, among others, "any individuals employed as farm laborers" (hereinafter referred to as the farm laborer exclusion) (Labor Law § 701 [3] [a]).
In May 2016, plaintiffs commenced this action against defendants State of New York and Governor Andrew Cuomo (hereinafter collectively referred to as the State defendants) seeking, among other things, a declaration that the farm laborer exclusion is unconstitutional. Specifically, plaintiffs alleged that the farm laborer exclusion violates several provisions of the NY Constitution, including the right to organize and collectively bargain guaranteed to "[e]mployees" by article I, § 17 (first cause of action), the right to equal protection (second cause of action) (see NY Const, art I, § 11), the right to due process under the law (third cause of action) (see NY Const, art I, § 6), and the right to freedom of association (fourth cause of action) (see NY Const, art I, § 9). In June 2016, prompted by the State defendants' public statements that they did not intend to defend the constitutionality of the farm laborer exclusion, defendant New York Farm Bureau, Inc. (hereinafter the Farm Bureau) — "the state's largest agricultural advocacy organization," whose membership is primarily comprised of agricultural employers — moved to intervene as a defendant in this action. Supreme Court granted that motion in October 2016. Shortly thereafter, the State defendants interposed an answer stating, among other things, that they intended to join plaintiffs in arguing that the farm laborer exclusion is unconstitutional [FN1]. Around that same time, the Farm Bureau moved to dismiss the complaint for failure to state a cause of action (see CPLR 3211 [a] [7]), which plaintiffs and the State defendants opposed. Supreme Court granted the Farm Bureau's motion to dismiss the complaint, finding, among other things, that the right to organize and collectively bargain guaranteed to employees in NY Constitution, article I, § 17 does not extend to farm laborers. Plaintiffs and the State defendants now appeal.
We must first address two threshold issues raised by the Farm Bureau. The Farm Bureau argues that the State defendants lack standing to appeal because they are not aggrieved by the dismissal of the complaint brought against them and, further, that this appeal does not present a justiciable controversy given the State defendants' alignment in position with plaintiffs. We disagree with the Farm Bureau on both points.
We initially resolve the issue of justiciability, as it implicates the Court's subject matter jurisdiction (see e.g. Matter of New York State Inspection, Sec. & Law Enforcement Empls., Dist. Council 82, AFSCME, AFL-CIO v Cuomo, 64 NY2d 233, 241 n 3 [1984]). Pursuant to CPLR 3001, "[S]upreme [C]ourt may render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy whether or not further relief is or could be claimed." "To constitute a 'justiciable controversy,' there must be a real dispute between adverse parties, involving substantial legal interests for which a declaration of rights will have some practical effect" (Chanos v MADAC, LLC., 74 AD3d 1007, 1008 [2010]; see American Ins. Assn. v Chu, 64 NY2d 379, 383 [1985]; New York Pub. Interest Research Group v Carey, 42 NY2d 527, 529-531 [1977]).
There is no doubt that plaintiffs' complaint presented a bona fide justiciable controversy as to whether the farm laborer exclusion violates the NY Constitution (see e.g. Blye v Globe-Wernicke Realty Co., 33 NY2d 15, 19 [1973]). That justiciable controversy was not, as the Farm Bureau contends, eliminated by the State defendants' subsequent decision to forgo defending the constitutionality of the exclusion in court (see United States v Windsor, 570 US 744, 756 [2013]; Immigration & Naturalization Serv. v Chadha, 462 US 919, 939-940 [1983]). Notwithstanding the State defendants' position that the farm laborer exclusion is unconstitutional, the Governor and the executive agencies charged with the enforcement of SERA continue to apply and give effect to the exclusion (see United States v Windsor, 570 US at 756; Immigration & Naturalization Serv. v Chadha, 462 US at 939-940). Despite their alignment with the State defendants, plaintiffs still do not have the ultimate relief they seek. Moreover, the Farm Bureau became a party in this action "for all purposes" when it was granted permission to intervene as a defendant (Matter of Greater N.Y. Health Care Facilities Assn. v DeBuono, 91 NY2d 716, 720 [1998]; see Matter of Rent Stabilization Assn. of N.Y. City v New York State Div. of Hous. & Community Renewal, 252 AD2d 111, 116 [1998]). The Farm Bureau's "sharp adversarial presentation of the issues" in its [*2]motion to dismiss establishes the existence of a real dispute between adverse parties regarding substantial legal interests (United States v Windsor, 570 US at 761). Thus, contrary to the Farm Bureau's assertions, this case squarely presents a ripe, justiciable controversy (see CPLR 3001; compare Schultz v City of Port Jervis, 242 AD2d 699, 700-701 [1997]).
As for the issue of aggrievement, CPLR 5511 provides that only "[a]n aggrieved party" may appeal from an appealable order or judgment (see Matter of Dolomite Prods. Co., Inc. v Town of Ballston, 151 AD3d 1328, 1331 [2017]). "[A] party is aggrieved when the court denies, in whole or in part, such party's requested relief [or, conversely,] when a court grants relief, in whole or in part, against such party and such party had opposed the requested relief" (Matter of Dolomite Prods. Co., Inc. v Town of Ballston, 151 AD3d at 1331; see Mixon v TBV, Inc., 76 AD3d 144, 156-157 [2010]). Here, consistent with their intention — announced in their answer — to argue that the farm laborer exclusion violates the Equal Protection Clause of the NY Constitution, the State defendants opposed and advocated for the denial of the Farm Bureau's motion to dismiss the complaint. As Supreme Court granted the motion to dismiss, the State defendants are an aggrieved party and, thus, proper appellants (see generally Matter of Dolomite Prods. Co., Inc. v Town of Ballston, 151 AD3d at 1331; Mixon v TBV, Inc., 76 AD3d at 156-157).
Turning to the merits, plaintiffs — joined by the State defendants — assert that the farm laborer exclusion denies them equal protection of the law by infringing upon their fundamental right to organize and collectively bargain, as guaranteed by NY Constitution, article I, § 17. NY Constitution, article I, § 17 states, in pertinent part, that "[e]mployees shall have the right to organize and to bargain collectively through representatives of their own choosing." The Farm Bureau argues that, because article I, § 17 was adopted just one year after the enactment of SERA, the NY Constitution's use of the word "employees" should be construed to include only those individuals who qualify as "employees" under Labor Law § 701 (3) (a). Through this reasoning, the Farm Bureau contends that "individuals employed as farm laborers" do not have a constitutional right to organize and collectively bargain (Labor Law § 701 [3] [a]). In dismissing the complaint, Supreme Court appears to have accepted this proposition. We, however, categorically reject it.
It is a well-settled and basic tenet of constitutional and statutory interpretation that the clearest and "most compelling" indicator of the drafters' intent is the language itself (People v Carroll, 3 NY2d 686, 689 [1958]; see Matter of Lisa T. v King E.T., 30 NY3d 548, 552 [2017]; People v Page, 88 NY2d 1, 9 [1996]). "[R]esort must be had to the natural signification of the words employed, and if they have a definite meaning, which involves no absurdity or contradiction, there is no room for construction, and courts have no right to add to or take away from that meaning" (Tompkins v Hunter, 149 NY 117, 122-123 [1896]; accord Majewski v Broadalbin—Perth Cent. School Dist., 91 NY2d 577, 583 [1998]; see People v Carroll, 3 NY2d at 689). In other words, "[w]hen th[e] language is clear and leads to no absurd conclusion," the words must be accorded their plain and ordinary meaning (People v Carroll, 3 NY2d at 689; see Burton v New York State Dept. of Taxation & Fin., 25 NY3d 732, 739 [2015]; Matter of Carey v Morton, 297 NY 361, 366 [1948]).
Application of these longstanding principles here leads us to the inescapable conclusion that the choice to use the broad and expansive word "employees" in NY Constitution, article I, § 17, without qualification or restriction, was a deliberate one that was meant to afford the constitutional right to organize and collectively bargain to any person who fits within the plain and ordinary meaning of that word. Indeed, there is nothing in the language of the constitutional provision to support the suggestion that the drafters intended for the term "employees" to be narrowed or limited in any way. Accordingly, when the term "employees" is given its natural and ordinary meaning, we think it clear that the constitutional right to organize and collectively bargain extends to individuals employed as farm laborers (see generally Burton v New York State Dept. of Taxation & Fin., 25 NY3d at 739-741).
Given the clarity of the provision's language, we need not look any further than the text to reject the Farm Bureau's argument that the constitutional provision should be read in conjunction [*3]with Labor Law § 701 (3) (a). However, were the provision's wording unclear, a review of the relevant historical material would lead us to the same conclusion (see Burton v New York State Dept. of Taxation & Fin., 25 NY3d at 741). It is evident from the revised record of the Constitutional Convention of 1938 that the drafters of NY Constitution, article I, § 17 were eminently aware of the statutory right to organize and collectively bargain created by SERA and the limited definition ascribed to "employees" under that statutory framework (see e.g. 2 Rev Rec, 1938 NY Constitutional Convention at 1217-1220). By extension, the drafters are presumed to have also been aware that SERA's definitions were "special definitions of limited application" (Railway Mail Assn. v Corsi, 293 NY 315, 321 [1944], affd 326 US 88 [1945]), expressly intended to apply only "when used in th[at] article" (Labor Law § 701). Thus, if the drafters had wished to adopt SERA's special definition of "employees," they would have had to incorporate it explicitly into the constitutional amendment. The drafters did not do so, thereby giving rise to the inference that its omission was intentional (cf. McKinney's Cons Laws of NY, Book 1, Statutes § 240; Kirshtein v AmeriCU Credit Union, 65 AD3d 147, 151 [2009]). Rather, they chose to employ the general and unqualified word "employees." Given the language specifically used, there is simply no basis to read Labor Law § 701's limited definition of "employees" into NY Constitution, article I, § 17 (see generally Matter of Di Brizzi [Proskauer], 303 NY 206, 214 [1951]). Accordingly, Supreme Court erred in determining that NY Constitution, article I, § 17 does not apply to farm laborers.
As an alternative basis for dismissal of plaintiffs' equal protection claim, not reached by Supreme Court, the Farm Bureau argued that, even if farm laborers have a constitutional right to organize and collectively bargain, that right is not fundamental and, therefore, Labor Law § 701 (3) (a) need only withstand rational basis review. The Farm Bureau contended that, because Labor Law § 701 (3) (a) passes rational basis review, it was entitled to dismissal of plaintiffs' equal protection claim. To evaluate the merits of this legal question, we must decide whether the constitutional right to organize and collectively bargain is one of fundamental dimension (see Myers v Schneiderman, 30 NY3d 1, 11 [2017]; see generally Campaign for Fiscal Equity v State of New York, 86 NY2d 307, 319 [1995]). We conclude that it is.
First and foremost, we find the language of the constitutional provision to be significant. In no uncertain terms, NY Constitution, article I, § 17 expressly bestows upon "employees" an unqualified "right to organize and to bargain collectively through representatives of their own choosing" (see San Antonio Independent School Dist. v Rodriguez, 411 US 1, 33-34 [1973]; Doe v Wigginton, 21 F3d 733, 739-740 [6th Cir 1994]). This expressly enumerated right — adopted as a result of the Constitutional Convention of 1938 and ratification by the electorate — is enshrined in the New York Bill of Rights, providing strong evidence that the right was regarded as fundamental (see Pointer v Texas, 380 US 400, 404 [1965]).
A review of the record of the Constitutional Convention of 1938 confirms that the provision's drafters intended to confer fundamental status upon the right to organize and bargain collectively (see e.g. 2 Rev Rec, 1938 NY Constitutional Convention at 1219). Indeed, several convention delegates repeatedly described the right as "fundamental" (see e.g. 2 Rev Rec, 1938 NY Constitutional Convention at 1218-1219, 1230, 1246; 3 Rev Rec, 1938 Constitutional Convention at 2205, 2243), with one such delegate declaring it to be "the most fundamental right of the American worker" (2 Rev Rec, 1938 NY Constitutional Convention at 1246). Its placement within the NY Constitution was purposeful, intending to ensure that "no temporary reactionary court or reactionary Legislature [could] deprive the wage earners of [the] State of th[e] fundamental right" to organize and bargain collectively (2 Rev Rec, 1938 NY Constitutional Convention at 1246). Moreover, the convention's record reveals that the right to organize and bargain collectively was originally proposed as an amendment to the NY Constitution's general provisions, but that the delegates later voted to place it within the Bill of Rights to signify its importance (see 2 Rev Rec, 1938 NY Constitutional Convention at 2244).
History and tradition within the state further demonstrate that the right to organize and collectively bargain should be accorded fundamental status (see generally Washington v Glucksberg, 521 US 702, 721 [1997]; People v Knox, 12 NY3d 60, 67 [2009]). It was recognized [*4]at the time of the Constitutional Convention of 1938 that "New York ha[d] been the pioneer [s]tate in the development of the Labor Law" and that the "right to organize, strike and picket" was "broadly recognized" under New York common law (2 Rev Rec, 1938 NY Constitutional Convention at 1217). Furthermore, this state's longstanding tradition of protecting the rights of workers is well-documented (see e.g. People v Muller, 286 NY 281, 287 [1941] [Finch, J., dissenting]; J.H. & S. Theatres, Inc. v Fay, 260 NY 315, 317 [1932]; National Protective Assn. of Steam Fitters & Helpers v Cumming, 170 NY 315, 321-322 [1902]; Mills v United States Print Co., 99 App Div 605, 608-609 [1904]; Butterick Publ. Co. v Typographical Union No. 6, 50 Misc 1, 7-8 [Sup Ct, NY County 1906]; Rogers v Evarts, 17 NYS 264, 268-269 [Sup Ct, Broome County 1891]).
Thus, upon our consideration of the specific language of the constitutional provision and its deliberate placement within the New York Bill of Rights, as well as our review of the record from the Constitutional Convention of 1938 and New York's longstanding history and tradition of protecting workers' right to organize and collectively bargain, we are firmly convinced that the constitutional right bestowed upon "employees" in this state "to organize and bargain collectively through representatives of their own choosing" (NY Const, art I, § 17) is a fundamental right, and that any statute impairing this right must withstand strict scrutiny (see Myers v Schneiderman, 30 NY3d at 21-22; People ex rel. Wayburn v Schupf, 39 NY2d 682, 686-687 [1976])[FN2]. Under strict scrutiny review, a statute that infringes upon a fundamental right is "void unless necessary to promote a compelling [s]tate interest and narrowly tailored to achieve that purpose" (Golden v Clark, 76 NY2d 618, 623 [1990]; accord Myers v Schneiderman, 30 NY3d at 21-22; see People ex rel. Wayburn v Schupf, 39 NY2d at 687). We reject the Farm Bureau's argument that Labor Law § 701 (3) (a) is subject to and withstands rational basis review [FN3]. Accordingly, we find that plaintiffs have stated a valid equal protection claim and that Supreme Court erred in dismissing that claim.
We recognize that, in a motion to dismiss posture, as we have here, we are tasked with determining whether plaintiffs have stated a cognizable cause of action, which they have [FN4] (see Myers v Schneiderman, 30 NY3d at 11; Campaign for Fiscal Equity v State of New York, 86 NY2d at 318). We acknowledge the dissent's position that, ordinarily, we would remit the matter for the Farm Bureau to answer the complaint. However, we agree with the State defendants that, under these unique circumstances, where we are presented with a purely legal constitutional question, remittal is unnecessary. There is no reason to remit the matter for Supreme Court to determine whether Labor Law § 701 (3) (a) meets strict scrutiny review when it is clear, from its face, that it would fail. Even if the farm laborer exclusion serves to protect some aspect of the state's agricultural industry, the wholesale exclusion of farm laborers from SERA's statutory framework is not narrowly tailored to any compelling state interest. As the farm laborer exclusion cannot conceivably withstand strict scrutiny, it violates the NY Constitution. Accordingly, we declare that the exclusion of "individuals employed as farm laborers" from SERA's definition of the term "employees," set forth in Labor Law § 701 (3) (a), is unconstitutional as a matter of law.
In light of our determination, we do not need to decide whether Supreme Court properly dismissed plaintiffs' remaining claims. Although plaintiffs have prevailed, we decline to grant their request for an award of counsel fees.
Garry, P.J., Lynch and Devine, JJ., concur.




Pritzker, J. (dissenting).


As a threshold matter, I agree with the majority that plaintiffs have established standing and that the appeal presents a justiciable controversy. However, because I find that the exclusion contained in Labor Law § 701 (3) (a) (hereinafter the farm laborer exclusion) is constitutional, I respectfully dissent and would affirm Supreme Court's dismissal of plaintiffs' declaratory judgment action. At the outset, it is my opinion that (1) NY Constitution, article I, § 17 did not repeal the farm laborer exclusion, (2) the right to organize and bargain collectively is not a fundamental right, and (3) farm laborers are not a suspect class, and, to the extent that plaintiffs assert disparate impact, the pleadings were insufficient. Accordingly, Supreme Court properly applied the rational basis test, found Labor Law § 701 (3) (a) to be constitutional and, as such, dismissed plaintiffs' action.
I turn first to the majority's conclusion that the right of farm laborers to organize and bargain collectively is guaranteed by NY Constitution, article 1, § 17, as generally articulated in plaintiffs' first cause of action. This conclusion is based upon an erroneous statutory construction of the NY Constitution and is tantamount to a finding that the delegates at the Constitutional Convention of 1938 intended to impliedly or explicitly repeal the farm laborer exclusion, which was enacted only a year prior. Such construction "ignore[s] the fundamental tenet of statutory construction that implied repeal or modification of a preexisting law is distinctly disfavored" (Local Govt. Assistance Corp. v Sales Tax Asset Receivable Corp., 2 NY3d 524, 544 [2004]; see Iazzetti v City of New York, 94 NY2d 183, 189 [1999]; Matter of Consolidated Edison Co. of N.Y. v Department of Envtl. Conservation, 71 NY2d 186, 195 [1988]; Besser v Squibb & Sons, 146 AD2d 107, 114 [1989], affd 75 NY2d 847 [1990])[FN5]. "If by any fair construction, a reasonable field of operation can be found for [both] statutes, that construction should be adopted" (People v Newman, 32 NY2d 379, 390 [1973], cert denied 414 US 1163 [1974]; see Local Government Assistance Corp. v Sales Tax Asset Receivable Corp., 2 NY3d at 544; Cimo v State of New York, 306 NY 143, 148-149 [1953]).
Here, both the NY Constitution and the Labor Law can be given operation by construing the constitutional amendment as "accord[ing] recognition to the right of labor to organize and bargain collectively" within the limitations set forth in the Labor Law (Matter of Trustees of Columbia Univ. in City of N.Y. v Herzog, 269 App Div 24, 30 [1945], affd 295 NY 605 [1945]). The First Department, when considering the effect of the 1938 constitutional amendment on a similar Labor Law provision, held that NY Constitution, article I, § 17 "was not intended to invalidate existing legislation which imposed a duty on employers to bargain collectively with employees even though that obligation by reason of certain exemptions or exceptions was not in all respects coextensive with the rights of labor" (Matter of Trustees of Columbia Univ. in City of N.Y. v Herzog, 269 App Div at 30 [emphasis omitted]; see McGovern v Local 456, Intern. Broth. of Teamsters, Chauffeurs & Warehousemen & Helpers of America, AFL-CIO, 107 F Supp 2d 311, 318-319 [SD NY 2000]). Mindful that the "Legislature is hardly reticent to repeal statutes when it means to do so" (Alweis v Evans, 69 NY2d 199, 204 [1987]), to effect repeal, there must be "an express manifestation of intent by the Legislature — either in the statute or the legislative history" (Matter of Consolidated Edison Co. of N.Y. v. Department of Envtl. Conservation, 71 NY2d at 195; see Alweis v Evans, 69 NY2d at 204; see generally McKinney's Cons Laws of NY, Book 1, [*5]Statutes § 392). In fact, as noted by the majority, at the time of the Constitutional Convention of 1938, "the drafters of NY Constitution, article I, § 17 were eminently aware of the statutory right to organize and collectively bargain created by [the State Labor Relations Act — later renamed the New York State Employment Relations Act (hereinafter SERA)] and the limited definition ascribed to 'employees' under that statutory framework." Despite this awareness, a thorough review of article I, § 17, as well as the revised record of the Constitutional Convention, does not reveal any such "express manifestation" to repeal the farm laborer exclusion (Matter of Consolidated Edison Co. of N.Y. v Department of Envtl. Conservation, 71 NY2d at 195).
Nor do I agree with the majority to the extent that it asserts that the
relevant historical material of the Constitutional Convention of 1938 supports repeal. First, statements that were made by delegates at the Constitutional Convention evince an intention to preserve — rather than expand — the protections afforded by existing legislation. For example, after the language that ultimately became NY Constitution, article 1, § 17 was read aloud, a delegate who was commenting on the efficacy of the amendment stated that "there may be no opportunity in the future as a result of an amendment or repeal of the existing legislation to raise such an issue in this [s]tate" (3 Rev Rec, 1938 NY Constitutional Convention at 2205 [emphasis added]). Moreover, another delegate recognized that, "organized labor asserted its advocacy of preserving, by constitutional amendment, contemporary recognition of its rights — achieved after years of struggle" (3 Rev Rec, 1938 NY Constitutional Convention at 2202). Notably, one delegate proposed an amendment that addressed the right to organize and bargain collectively to specifically include "farmers," but this amendment was not adopted (1 Rev Rec, 1938 NY Constitutional Convention at 94). Thus, based upon the express language of NY Constitution, article I, § 17, as well as the relevant historical material, it is my opinion that article I, § 17 did not repeal the farm laborer exclusion by creating a new statutory bargaining right for those employees excluded by SERA [FN6]. As such, I agree with Supreme Court that plaintiffs' allegations, taken as true, have failed to demonstrate that the farm laborer exclusion runs afoul of article 1, § 17 (see Overstock.com, Inc. v New York State Dept. of Taxation & Fin., 20 NY3d 586, 593 [2013], cert denied 571 US 1071 [2013]; New York State United Teachers v State of New York, 140 AD3d 90, 95 [2016], lv dismissed 28 NY3d 978 [2016], lv denied 28 NY3d 915 [2017]).
My inquiry cannot end there, however, because, although the farm laborer exclusion does not fun afoul of NY Constitution, article I, § 17, it could still violate substantive due process under NY Constitution, article 1, § 6, as alleged in plaintiffs' third cause of action — an inquiry that hinges upon the nature of the right, which then governs the level of scrutiny to apply. To that end, in contrast to the majority's opinion, I find that the right to organize and bargain collectively is not a fundamental right in the constitutional sense and, accordingly, does not invoke heightened scrutiny. Concededly, these rights have been referred to in both case law and at the Constitutional Convention of 1938 as "fundamental," yet there is a marked difference between calling a right fundamental and making a legal determination that a certain right is among the "fundamental rights" that invoke heightened scrutiny by the courts. "Fundamental rights are those deeply rooted in this Nation's history and tradition. They include the right to marry; the right to have children; the right to decide how one's children will be educated; and the right to engage in private consensual sexual activity" (People v Knox, 12 NY3d 60, 67 [2009] [internal quotation marks and citations omitted], cert denied 558 US 1011 [2009]). Fundamental rights also include the right to vote, the right to travel, the right of free speech and the right of a criminal defendant to appeal (see Alevy v Downstate Med. Ctr. of State of N.Y., 39 NY2d 326, 332 [1976]). One need only imagine and compare laws that would prevent farm laborers from exercising freedom of speech, voting, traveling, marrying, raising children or appealing criminal convictions to recognize the distinction and understand why a fundamental constitutional right is not implicated here. Further, inclusion of the right to organize and bargain collectively in the New York Bill of Rights does not, per se, [*6]confer upon it fundamental constitutional right status (see e.g. McDonald v City of Chicago, Ill., 561 US 742, 760-61 (2010); Hurtado v California, 110 US 516 [1884]). For example, although the Bill of Rights contains fundamental rights such as the freedom of speech (see NY Const, art I, § 8), it also provides that "[n]o laborer, worker or mechanic, in the employ of a contractor or sub-contractor engaged in the performance of any public work, shall be permitted to work more than eight hours in any day or more than five days in any week, except in cases of extraordinary emergency" (NY Const, art 1, § 17), which is clearly not a fundamental right.

The next issue to be determined is whether the farm laborer exclusion violates equal protection under NY Constitution, article 1, § 11, as alleged in plaintiffs' second cause of action. "The general rule in equal protection analysis is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest" (Samuels v New York State Dept. of Health, 29 AD3d 9, 16 [2006] [internal quotation marks, brackets and citations omitted], affd 7 NY3d 338 [2006]; see New York State United Teachers v State of New York, 140 AD3d at 95). In the context of an equal protection challenge, rational basis review "gives way to strict scrutiny for classifications based on race, national origin or those affecting fundamental rights and to intermediate or heightened scrutiny for certain classifications such as gender and illegitimacy" (Samuels v New York State Dept. of Health, 29 AD3d at 16; see Alevy v Downstate Med. Ctr. of State of N.Y., 39 NY2d at 332). As relevant here, when an equal protection cause of action is based upon a disproportionate impact upon a suspect class, proof of discriminatory intent or purpose is required (see Village of Arlington Hgts. v Metro. Hous. Dev. Corp., 429 US 252, 264-265 [1977]; Campaign for Fiscal Equity v State of New York, 86 NY2d 307, 320 [1995]). Thus, to mount an equal protection challenge, plaintiffs must plead that they are members of a suspect class and the unequal treatment is a product of discriminatory intent on the part of the Legislature (see Campaign for Fiscal Equity v State of New York, 86 NY2d at 320).

Plaintiffs' claim fails in the first instance because farm laborers are not a suspect class, and plaintiffs failed to allege facts indicating that the farm laborer exclusion was motivated by racial animus in New York. Suspect classes are limited to "alienage, national origin, and race" (Alevy v Downstate Med. Ctr. of State of N.Y., 39 NY2d at 332 [internal citations omitted]). In their complaint, plaintiffs allege that there are approximately 60,000 workers employed in the agriculture industry in New York, that the average wages of farm laborers are "typically well below the poverty level," that farm laborers "often have very low levels of educational attainment," that they are "predominantly racial and ethnic minorities," that many are "monolingual Spanish speakers" and that many "lack lawful immigration status." However, plaintiffs fail to allege that farm laborers universally share a common, personal characteristic, such as alienage, national origin or race, which would render them a suspect class (see generally Graham v Richardson, 403 US 365, 371-372 [1971]; Hernandez v State of Texas, 347 US 475, 479-480 [1954]). Moreover, even if farm laborers constituted a suspect class, plaintiffs fail to allege facts showing that the Legislature enacted the exclusion with discriminatory intent or purpose (see Village of Arlington Hgts. v Metro. Hous. Dev. Corp., 429 US at 264-265; Campaign for Fiscal Equity v State of New York, 86 NY2d at 320). In what appears to be an attempt to do so, plaintiffs engage in a lengthy analysis of racial issues relative to the enactment of the National Labor Relations Act (hereinafter NLRA), which SERA was modeled after. According to plaintiffs, the initial state proposal included protections for farm laborers but that, "[i]n an effort to conform with the federal analog," a new version was introduced that adopted the NLRA's exclusion of farm laborers. Although plaintiffs allege that the agricultural worker exclusion in the NLRA was motivated by racial animus, they failed to specifically allege that the Legislature enacted the farm laborer exclusion with a similar improper motive and, therefore, did not sufficiently plead that the farm laborer exclusion was enacted in New York for a discriminatory purpose (see generally Arlington Hgts. v Metropolitan Hous. Corp., 429 US at 264-268).

 As the right to organize and bargain collectively is not a fundamental right, nor are farm laborers a suspect class, the rational basis test is the appropriate standard to measure the [*7]constitutionality of the classification at issue [FN7]. In this context, legislative acts "enjoy a strong presumption of constitutionality, and parties challenging a duly enacted statute face the initial burden of demonstrating the statute's invalidity beyond a reasonable doubt" (New York State United Teachers v State of New York, 140 AD3d at 95 [internal quotation marks, brackets, ellipsis and citations omitted]; see Overstock.com, Inc. v New York State Dept. of Taxation & Fin., 20 NY3d at 593). "Moreover, courts must avoid, if possible, interpreting a presumptively valid statute in a way that will needlessly render it unconstitutional" (LaValle v Hayden, 98 NY2d 155, 161 [2002] [citation omitted]; accord Overstock.com, Inc. v New York State Dept. of Taxation & Finance, 20 NY3d at 593). The general rule "is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest" (Samuels v New York State Dept. of Health, 29 AD3d at 16 [internal quotation marks and citations omitted]; see New York State United Teachers v State of New York, 140 AD3d at 95). Here, although plaintiffs raise legitimate policy concerns, there is no doubt that the farm laborer exclusion is rationally based. In fact, to some extent, plaintiffs concede that the exclusion was rationally based when enacted, but then argue that changes in farming have rendered the exclusion unnecessary to protect the small family farm. However, even defendants State of New York and Governor Andrew Cuomo agreed that many small family farms exist in New York. Further, the exclusion is also grounded on the seasonal nature of the work and the fact that harvesting is time-sensitive, and, as such, a carefully-timed strike could jeopardize the state's critical food supply, which could cause a devastating impact on its citizens. Although plaintiffs may not agree that these reasons are enough, it is my opinion that they are rational and, as such, pass constitutional muster. Accordingly, I would affirm Supreme Court's order granting the motion to dismiss, as plaintiffs' have failed to state a cause of action.
I must also briefly address a procedural issue that arises from the majority's decision. After reviewing the merits and concluding that Supreme Court erred in granting the motion of defendant New York Farm Bureau, Inc. (hereinafter the Farm Bureau) to dismiss, the majority has, sua sponte, declared the statute unconstitutional, granting plaintiffs complete relief [FN8]. Even if I were to agree with the majority that Supreme Court erred by granting the Farm Bureau's motion to dismiss, which I do not, it is my opinion that failing to remit the matter to Supreme Court for further proceedings deprives the Farm Bureau of its right to answer and further contest the action (see Matter of Village of Delhi v Town of Delhi, 72 AD3d 1476, 1478 [2010]; Matter of Marinaccio v Boardman, 303 AD2d 896, 897 [2003]), including the opportunity to raise any affirmative defenses that may still be raised (see CPLR 3018 [b]; 3211 [e])[FN9]. Although I am mindful that this Court can review certain purely legal issues supporting Supreme Court's ruling based on the Farm Bureau's motion to dismiss, I am not of the opinion that, upon the decision to reverse, we may then issue a pre-answer declaration in favor of the nonmoving party. Here, by reversing, the majority is not only denying the Farm Bureau the relief it is seeking, but is also extinguishing its right to answer. This undesirable and anomalous effect [FN10] causes the Farm Bureau [*8]severe prejudice by denying essential due process but still creating law [FN11]. Significantly, as observed by the majority, here, the jurisdictional prerequisite of justiciability hinges upon the Farm Bureau's "sharp adversarial presentation of the issues" (United States v Windsor, 570 US 744, 761 [2013]). However, the majority's decision deprives the Farm Bureau of its right to answer and otherwise zealously defend the action, which it would have the opportunity to do upon remittal. As such, I find the majority's declaration premature.
ORDERED that the order is reversed, on the law, with costs to plaintiffs, motion denied, and it is declared that the exclusion of "individuals employed as farm laborers" from the definition of the term "employees" set forth in Labor Law § 701 (3) (a) is unconstitutional.



Footnotes

Footnote 1: In the order from which plaintiffs and the State defendants appeal, Supreme Court incorrectly states that the State defendants did not interpose an answer to the complaint.

Footnote 2: Both New Jersey and Florida have constitutional provisions bearing similarity to NY Constitution, article I, § 17 (see NJ Const, art I, § 19; FL Const, art I, § 6). Both of these states have concluded that the right to organize and bargain collectively set forth in their respective constitutions is one of fundamental status (see e.g. Coastal Florida Police Benevolent Assn., Inc. v Williams, 838 So 2d 543, 548 [Fla 2003]; George Harms Constr. Co., Inc. v New Jersey Turnpike Auth., 137 NJ 8, 28-29, 644 A2d 76, 87 [1994]).

Footnote 3: Were we to conclude that the constitutional right to organize and collectively bargain is not fundamental, we would nonetheless find that it is an important constitutional right deserving of heightened scrutiny (see Matter of Anonymous v City of Rochester, 13 NY3d 35, 46-47 [2009]).

Footnote 4: As discussed above, we find that plaintiffs have stated valid claims under their first and second causes of action.

Footnote 5: Although a constitutional convention presents a different political setting compared to typical legislative action, the rules disfavoring implied repeal still apply (see People v Young, 18 App Div 162, 166 [1897]).

Footnote 6: If the right of farm laborers to organize and collectively bargain is enshrined in the New York Bill of Rights, why have numerous bills been offered to repeal the farm laborer exclusion as, under this theory, the exclusion had already been excised from the Labor Law by constitutional amendment in 1938?

Footnote 7: Intermediate scrutiny is inapplicable here as it has only been applied to a very limited number of legislative classifications, none of which are implicated here (see For the People Theatres of N.Y., Inc. v City of New York, 29 NY3d 340, 358 [2017], certs denied ___ US ___, ___, 138 S Ct 994, 1000 [2018]; Hernandez v Robles, 7 NY3d 338, 375 [2006]).

Footnote 8: As pointed out by the Farm Bureau in its brief, the motion to dismiss was not converted into a motion for summary judgment (see CPLR 3211 [c]).

Footnote 9: Although the majority opines that remittal is unnecessary because Labor Law § 701 (3) (a) would never survive strict scrutiny, the assertion of a meritorious affirmative defense would prevent a court from reaching that substantive issue.

Footnote 10: Paradoxically, if the Farm Bureau had not prevailed on its motion to dismiss in Supreme Court, it would have been permitted to answer in the ordinary course of litigation.

Footnote 11: This error is exacerbated by the unique setting present here as the State and Governor have joined plaintiffs in arguing that the statute is unconstitutional, concomitantly raising no affirmative defenses in their answer.